387 A.2d 1282
**COMMONWEALTH of Pennsylvania**
v.
**Gary POVISH, Appellant.**
Supreme Court of Pennsylvania.
Argued Jan. 10, 1978.
Decided June 2, 1978.

182

George E. Lepley, Jr., Asst. Public Defender, for appellant.

Allen E. Ertel, Dist. Atty., Robert F. Banks, First Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant was charged with robbing an employee of the Dairy-Lea store in Williamsport on December 3, 1973, and again on December 12, 1973.[1] On February 15, 1974, appellant filed a motion to suppress clothing seized pursuant to an invalid search warrant. A hearing was held on this motion on March 4, 1974. At this hearing, appellant sought to file a second or supplemental written suppression motion alleging that certain pre-trial identifications were unconstitutionally obtained.[2] The court granted appellant's motion to suppress clothing but denied, without a hearing, the request to amend the original suppression motion or to file a new motion to suppress the identification. Appellant filed, on April 18, 1974, a written motion for reconsideration of the court's denial of the second motion to suppress. The court denied this motion on June 10, 1974. On June 19, 1974, a jury found appellant guilty on both counts of robbery. The court denied post-verdict motions and sentenced appellant to a term of imprisonment of not less than eight months nor more than three years. The Superior Court affirmed the judgment of sentence without opinion. We granted allocatur and now vacate the judgment of sentence and remand with instructions.[3]

Appellant first contends the trial court erred in denying his request for a mistrial when the prosecutor, over objection, questioned appellant as to his ownership of the items of clothing ordered suppressed. The question resulted in ad-

1. Appellant was charged with two other counts of robbery which have been tried separately and are not involved in this appeal.

2. Although appellant labelled both his requests for relief "applications" to suppress evidence, in effect both the original and supplemental requests for suppression were motions to suppress constituting an application to the court to suppress evidence alleged to have been obtained in violation of appellant's constitutional rights. See Pa.R.Crim.P. 323(a); Pa.R.Crim.P. 304 Comment.

3. We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1977).

missions by appellant that he owned the clothing items on the relevant date. Appellant claims this questioning was improper as the "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). We do not agree.

The court suppressed a brown corduroy jacket, a brown suede jacket, a brown leather jacket, a red turtleneck sweater, a white shirt with blue stripes and flowers and a pair of blue jeans. During the Commonwealth's case-in-chief, the victim of the two robberies described the clothing worn by the robber, including a blue and white striped shirt with flowers on it, blue jeans and a rusty colored corduroy coat. During cross-examination of the witness, appellant introduced into evidence a copy of the police report made shortly after the two robberies, which contained a description of certain articles of the suspect's clothing as reported by witnesses. Appellant took the stand and denied his involvement. Subsequently, the Commonwealth sought to recall appellant for additional cross-examination to ascertain whether, in December, 1973, he owned certain items of clothing matching the witnesses' description. Appellant objected on the ground that these questions would violate the order suppressing clothing. Following discussion out of the hearing of the jury, the court determined the Commonwealth could question appellant as to his ownership of the clothing, limiting the questions to the descriptions contained in the police reports completed prior to the illegal search.[4]

4. "By The Court:
 "Now, the brown jacket referred to in the report of 12/4 is not identified as leather. Why should the court not conclude to your knowledge there was a leather jacket was a fruit of the illegal search?
 "By Mr. Smith [Assistant District Attorney]:
 "One moment, your Honor. Your Honor, the description does not include leather, so we would limit it to brown jacket, one pocket on the right side is the description of the jacket—
 "By The Court:
 "That the police had as of December the 4th.
 "By Mr. Smith:
 "That's correct, your Honor.

Over appellant's objection, the prosecutor then asked appellant whether on December 3, 1973, he had owned "a

"By The Court:

"My recollection is does he give—Were both these admitted into evidence. I believe they were by joint—

"By Mr. Smith:

"These have been admitted into evidence, yes, Your Honor.

"By The Court:

"It would appear to the Court based on these exhibits, the police long before the illegal search had knowledge that the suspect had a white shirt with blue flowered stripes and a brown jacket with one pocket on the side of it, I believe was the language. And that the suspect of the 12/12 incident had a brown corduroy coat. I'll permit the District Attorney to use the language of which the police had knowledge prior to the search.

"By Mr. Smith:

"Beg your pardon, your Honor.

"By The Court:

"As long as you use the language—

"By Mr. Smith:

"That's in the report.

"By The Court:

"—that's in those reports, I'll permit you to cross examine the defendant on it.

"By Mr. Smith:

"Yes, your Honor, we'd limit ourselves just to those three, those three items.

"By The Court:

"I think it's important from an educational standpoint to explain this for those present including the police and others that searches may be conducted as long as very strict rules are complied with. If those rules are not complied with, anything found in the search, is suppressed. Now a court, Judge Greevy found in an early hearing an improper search had been conducted and therefore the items seized can not be used as evidence. It is a basic matter of law that anything, any knowledge acquired as a result of that illegal search is also suppressed. However, that rule would not apply to any knowledge which the police had before the illegal search and it's that information which may be subject to your cross examination. You have an exception.

"By Mr. Campana [Defense Counsel]:

"Yes, your Honor, I hope so.

"By The Court:

"All right, we may bring the jury over. The Commonwealth has asked that the defendant be recalled to the stand for additional questions by cross examination and the Court will permit that.

"By Mr. Campana:

"Over objection, your Honor.

"By The Court:

"Yes.

"(Mr. Povish [appellant] went back on the witness stand)"

brown jacket with one pocket on the right side," to which appellant responded, "I own three brown jackets. Which one do you mean?" The prosecutor replied, "The one with the pocket on the right side." Appellant answered:

"They all have pockets. Let me explain that. I have a corduroy coat and they [sic] have pockets on the right side. I have a leather coat which have [sic] pockets on the right side. I have a half cut jacket like this leather coat with right [sic] pockets on the right side. Which one do you mean?

"Q. I believe you have answered the question."

Appellant also stated that on December 3, 1973, he owned a blue shirt with flowers.

It is clear the trial court ruled correctly in allowing questions carefully limited to information in the police reports. There was ample evidence that the description of the clothing worn by the perpetrator of the robberies had been ascertained from independent sources prior to the illegal search. Further, two witnesses had testified as to the articles of clothing worn by the robber. Thus, the "fruit of the poisonous tree doctrine" is inapplicable. That doctrine "excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an 'independent source.'" *Costello v. United States*, 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961), citing *Silverthorne Lumber Company v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). The information gained from witnesses describing the clothing worn by the robber did not become unusable merely because an illegal search revealed the same information. See *United States v. Barrow*, 363 F.2d 62 (3d Cir. 1966). Absent any exploitation of the illegality, the prosecutor's additional cross-examination was proper.

Appellant argues the prosecutor, without prior knowledge that appellant owned the clothing in question, would not have asked the questions of appellant because he could not have been certain of the answer. Appellant contends, therefore, that the prosecutor's attempt to connect

appellant to the robberies by asking about his ownership of the clothing, was a strategy premised upon the fruits of the prior illegal search. Appellant concludes the Commonwealth attempted to use and benefit by the prior illegality. While it may be true that without the illegal search the prosecutor might not have known in advance the answers to his questions, nevertheless there is no "real and direct causal relation" between the illegality and the challenged questioning so as to render the questions impermissible. See *Commonwealth v. Whitaker*, 461 Pa. 407, 413, 336 A.2d 603, 606 (1975). *Whitaker*, relied on by appellant, is not to the contrary, for in that case, unlike here, the Commonwealth did not meet its burden of establishing that its proof had an independent origin. See *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939); *Commonwealth v. Whitaker*, supra.

Appellant next contends the trial court erred in failing to grant a mistrial when one of the investigating officers testifying at trial referred to one of the other robberies with which appellant was charged, but for which he was not then being tried. The officer referred to the January 3, 1973, robbery of Hurr's dairy store during defense counsel's cross-examination of the officer called in rebuttal by the Commonwealth to testify concerning appellant's inconsistent alibis. Appellant had testified that at the time of the events on December 3, 1973, he was at Tag's Bar and Grill. He further testified that he could not recall his whereabouts on the evening of December 12, 1973. On cross-examination, appellant admitted he knew a Betty Mattie but denied telling the police he was in her company on December 3 and 12, 1973. In rebuttal, the prosecution called Officer McNyck who testified concerning a conversation he had with appellant at the local Democratic Club after appellant had been charged with the four robberies and was out on bail. McNyck stated appellant had told him he had been with Betty Mattie "on the dates that the armed robberies had taken place." The reference complained of came during cross-examination of the officer by defense counsel:

"Q. [Defense counsel, Mr. Campana] What time did you
go out that night to the Democratic Club?

A. Oh, it was after two o'clock when I went in there.

Q. Had you been indulging in alcoholic beverages be-
fore you went there?

A. No, I had been working on different cases. I was
working on a couple other incidents that we had.

Q. You don't recall him saying that it was December
3rd or December 12th that he was with his girl-
friend, right?

A. He didn't say the date December 3rd or December
the 12th.

Q. He didn't tell you where he was with his girlfriend,
did he?

A. The one incident. . . . the Hurr's.

By Mr. Campana: Your Honor, I'm . . . . .

A. . . . . . robbery had occurred.

By Mr. Campana: . . . . . going to object to that. It was
not responsive to my question and I ask for a mis-
trial."

The court immediately cautioned the jury to disregard the
last answer because it was not responsive. Following a
side-bar conference, the court denied the motion for a mis-
trial. Appellant declined the court's invitation "to suggest
any special [jury] instruction regarding [the] incident."

 This Court has held that a reference to other
criminal activity will be found prejudicial only if the testi-
mony conveys to the jury, either expressly or by reasonable
implication, the fact of a prior criminal offense. *Common-
wealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973). Applying
this test here, we agree with the trial court that the single
reference to "Hurr's robbery" did not supply a sufficient
basis for a reasonable inference of prior criminal activity.
As the trial court stated:

"[A]bsolutely no other mention was made in the course of
the trial of other prior or pending criminal action, nor of
any other robberies which might have been related to this

incident; moreover, the names "Dairylea" and "Hurr's" both represent well-known dairy stores in Williamsport, and the comment could have very easily been misinterpreted by the jury to have been a slip of the tongue on the part of the officer."

See *Commonwealth v. Smith*, 454 Pa. 515, 520, 314 A.2d 224, 226 (1973) (investigating officer's testimony that he " 'got together a group of nine photographs' " from which the victim identified the defendant held not to allow reasonable inference of prior criminal activity); *Commonwealth v. Banks*, supra (detective's testimony that appellant was taken into custody at detention center did not reasonably raise inference of prior criminal activity).

Moreover, any possible prejudicial effect which may have been occasioned by Officer McNyck's remark was removed by the Court's immediate cautionary instruction to the jury. As this Court stated in *Commonwealth v. Williams*, 470 Pa. 172, 178, 368 A.2d 249, 252 (1977):

"[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy. Our decisions have indicated that there are situations where the taint, resulting from an improper reference to an unrelated criminal act, may be expunged without resort to the extreme remedy of aborting an otherwise fair trial. It is suggested that our decisions in *Commonwealth v. Groce*, 452 Pa. 15, 303 A.2d 917 (1973) and *Commonwealth v. Allen*, [448 Pa. 177, 292 A.2d 373 (1972)] would indicate otherwise. We do not agree. In *Groce*, supra and *Allen*, supra, the challenged references to prior and unrelated criminal activities were permitted by the trial court for the jury's consideration. In the instant action, the testimony was stricken and the jury immediately cautioned."

In *Williams*, we held that any prejudice arising from a witness' remark that the defendant used drugs was cured by the court's prompt cautionary instruction. See *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975) (reference

to indictment to which defendant had pleaded guilty but on which he had not yet been sentenced held cured by jury instruction).

■ Finally, appellant contends the suppression court erred when it refused, without a hearing, to permit appellant to file an amended motion to suppress or a new motion to suppress certain identification testimony. We agree and remand.

Immediately before the hearing on his motion to suppress clothing, appellant sought to file a second or supplemental motion to suppress identification testimony of two witnesses to whom police had shown photographs of appellant when appellant's counsel was not present. The suppression court gave no reason for summarily denying the supplemental motion, but the opinion of the trial court denying post-verdict motions states that the suppression court's denial was based "on the ground that Rule 323 requires that all applications to suppress be filed at the same time." The trial court refused to reconsider this ruling and, over appellant's objection, permitted the in-court identification.

Nothing in Pa.R.Crim.P. 323 or any other of our rules of criminal procedure supports the court's action. The only time limitation in Rule 323 is in subsection (b) which requires that an application to suppress must be filed not later than ten days before trial. Appellant sought to file the second or supplemental motion to suppress identification testimony on March 4, 1974, before the hearing on the motion to suppress clothing. Appellant's trial was scheduled for May, 1974, but did not commence until June 18, 1974. Clearly, appellant's request to supplement his motion to suppress clothing before hearing on that motion was well within the time requirement of Rule 323(b). Subsection (b) cannot, therefore, support the court's denial of appellant's timely request to supplement his motion to suppress or to file an additional motion to suppress prior to hearing on the original motion.

The only other arguably relevant part of Rule 323 is subsection (d) which provides that

"[t]he application shall state specifically the evidence sought to be suppressed, the specific constitutional grounds rendering the evidence inadmissible, and shall state with particularity the facts and events in support thereof."

The Commonwealth argues that once a motion to suppress some evidence has been filed, subsection (d) precludes filing of a motion to suppress other evidence. The Commonwealth maintains that this rule applies regardless of whether a hearing has yet been held on the original motion or an adjudication rendered. In support of its position, the Commonwealth refers to the Comment to Rule 323 which reads, in part: "The rule is designed to provide one single procedure for the suppression of evidence alleged to have been *obtained* in violation of the defendant's constitutional rights."

We do not agree with the Commonwealth's interpretation. Pa.R.Crim.P. 323(d) provides only that all reasons for suppressing particular evidence not raised in the application to suppress shall be deemed waived.[5] This provision does not preclude proper and timely filing of a motion to supplement an earlier motion to suppress not yet heard or decided by the court, such as was here sought by appellant. Appellant's motion to suppress clothing and his timely supplemental or second motion to suppress identification testimony constitute a timely and proper "application to suppress." Nothing in the Comment supports a contrary conclusion. Rule 323 was revised to replace a number of different rules with one inclusive pretrial suppression rule. Thus the phrase "one single procedure" merely reflects that

---

**5.** This requirement is more directly stated in Pa.R.Crim.P. 304(e), also cited by the Commonwealth to support its argument. Here, as in Pa.R.Crim.P. 323(d), the requirement that "[a]ll grounds for the relief demanded shall be stated in the application and failure to state a ground shall constitute a waiver thereof" does not preclude the timely and proper filing of a second or supplemental motion prior to hearing or adjudication on the original motion. The two motions together constitute "the application."

Rule 323 is the only proper method for requesting, by an application for relief, the suppression of evidence alleged to have been obtained unconstitutionally.

Pa.R.Crim.P. 2 provides that

"[t]hese rules [of criminal procedure] are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay and as nearly as may be in consonance with the rules of statutory construction."

Our holding today, that timely and proper motions to amend or supplement motions to suppress already filed but not yet heard or decided by the court must be allowed as part of a defendant's application to suppress meets the mandates of Pa.R.Crim.P. 2. This holding allows for the "just determination" of a defendant's constitutional claims while preserving "simplicity in procedure" and "elimination of unjustifiable . . . delay."

The justness of this rule becomes evident when applied to the present facts. Appellant sought to supplement his original motion to suppress evidence with a motion to suppress other evidence before the hearing on the original motion and more than three months before commencement of trial. The record shows no reason to believe there would have been any unjustifiable delay or inconvenience in allowing a hearing on the additional motion, which on its face presents a claim of arguable merit. If the Commonwealth felt it had insufficient notice to meet appellant's additional claim, it was within the court's discretion to grant a postponement of the hearing, set another date for taking of additional evidence, or grant such other relief as was necessary in the interests of justice. In these circumstances, we hold the suppression court erred in refusing to hear appellant's motion, as part of his application for relief.

Accordingly, judgment of sentence vacated and case remanded for proceedings consistent with this opinion.