J-A29004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ELAINE T.  ACQUAVIVA | : | No. 1366 EDA 2018 |

Appeal from the Order Entered April 3, 2018
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0006800-2017

BEFORE:   OTT, J., DUBOW, J., and STEVENS[*], P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 25, 2019**

The Commonwealth appeals[1] from the order entered April 3, 2018, in the Bucks County Court of Common Pleas, granting appellee's, Elaine T. Acquaviva's, pretrial motion to suppress blood test results after she gave consent to a blood draw during the course of a driving under the influence ("DUI") investigation.  On appeal, the Commonwealth complains the trial court erred and/or abused its discretion in suppressing Acquaviva's blood alcohol results based solely on its failure to introduce evidence of the qualifications of the person who drew Acquaviva's blood because (1) such qualifications are

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has properly certified in its notice of appeal that the order substantially handicaps the prosecution pursuant to Pa.R.A.P. 311(d). Notice of Appeal, 5/3/2018.

not specifically required under Pennsylvania law and (2) are not the basis for pre-trial suppression but rather, is an issue subject to an evidentiary ruling to be made at trial. *See* Commonwealth's Brief at 4. For the reasons below, we reverse the order of the trial court, and remand for further proceedings.

The trial court set forth the factual history as follows:

> While on routine patrol, Officer Kyle Heasley (OFC Heasley) of the Lower Southampton Township Police Department, was stopped at a red light at the intersection of Street Road and Philmont. OFC Heasley was behind [Acquaviva] in the far right lane on Street Road travelling eastbound. When the signal turned green, OFC Heasley observed [Acquaviva] continue through the intersection. OFC Heasley observed [Acquaviva] swerve out of the right lane and almost strike the vehicles travelling in the left lane. OFC Heasley turned on his lights and pulled [Acquaviva] over to the right shoulder of Street Road.
>
> OFC Heasley read [Acquaviva] the DL-26B form in compliance with § 1547(b) of the Vehicle Code Chemical Test Refusal. [Acquaviva] thereafter consented to a blood test. The DL-26B form was signed and dated by both [Acquaviva] and OFC Heasley. [Acquaviva] was then transported to Bensalem Police Department where her blood was drawn. OFC Heasley testified that a Bensalem Rescue Squad member drew the blood. However, neither OFC Heasley, nor any other witness, testified identifying the Bensalem Rescue Squad who actually drew the blood or whether the member was qualified to draw blood.

Trial Court Opinion, 6/26/2018, at 1-2 (footnote omitted).

On December 21, 2017, Acquaviva filed a motion to suppress the blood results, arguing, *inter alia*, her constitutional rights were violated because the Commonwealth failed to qualify the Bensalem Rescue Squad member who drew the blood pursuant to 75 Pa.C.S. § 1547(c). A suppression hearing was held on January 30, 2018. On April 3, 2018, the trial court granted

Acquaviva's motion to suppress blood test results, providing the following relevant conclusions of law:

25. The blood test results must be suppressed because the Commonwealth failed to show that the blood was drawn by a qualified technician.

26. At [the suppression hearing], the Commonwealth did not put forth any evidence regarding the individual who drew the blood from [Acquaviva].

27. *Commonwealth v. Mahaney* holds that § 1547(c) and its corresponding regulations "focus on the person performing the blood testing and the equipment used, not the technician drawing the blood." *Commonwealth v. Mahaney*, 373 Pa. Super. 129, 133, 540 A.2d 556, 559 (1988). This holding has been interpreted by *Commonwealth v. Allen* to show that although the technician who draws the blood does not need to meet the requirements of 75 Pa.C.S.A. § 1547(c)(2), the Commonwealth still must establish that the technician who drew the blood is also qualified to take blood samples. *Commonwealth v Allen*, 394 Pa. Super. 127, 132-33, 575 A.2d 131, 134 (1990). Further, the issue of the technician who drew the blood was not at issue in *Mahaney* because the parties in *Mahaney* stipulated to the technician's qualifications to take blood samples. *Commonwealth v. Mahaney*, 373 Pa. Super. 129, 136, 540 A.2d 556, 559-60 (1988).

28. Here, there is no qualification on the record of the technician who drew the blood from [Acquaviva] nor is there any evidence to support a finding that the technician was qualified.

29. Without the qualification, the blood should be suppressed.

Findings of Fact, 4/3/2018, at 6-7. The Commonwealth filed a motion for reconsideration, which was denied on May 3, 2018. The Commonwealth then filed this appeal on the same day.[2]

Based on the nature of the Commonwealth's claims, we will address its second issue first. The Commonwealth argues the trial court erred and/or abused its discretion in granting suppression of Acquaviva's blood alcohol results based on solely on the Commonwealth's failure to introduce evidence at the suppression hearing of the qualifications of the person who drew Acquaviva's blood because "any issue involving such qualifications is not the basis for pre-trial suppression but, rather, is, at most, an issue subject to an evidentiary ruling to be made at trial." Commonwealth's Brief at 22 (some capitalization removed). The Commonwealth states:

> [Acquaviva] failed to raise any constitutional violation in his motion to suppress in connection to the claim at issue in this appeal. The only Fourth Amendment violation raised in h[er] motion in connection to the blood draw was specific to h[er] allegation of the possibility of two blood draws being conducted. This issue was readily disposed of during the suppression testimony: that only one blood draw was conducted by one paramedic. [Acquaviva]'s claim challenging the lack of qualifications alone, the basis upon which the suppression court suppressed the blood alcohol results, is not a claim that implicates the Fourth Amendment. ***See Schmerber v. California***, [384 U.S. 757 (1966)] (it is the unreasonableness of "means and procedures employed" in taking a DUI suspect's blood that implicate the Fourth Amendment's standard of reasonableness).

_____

[2] On May 7, 2018, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Commonwealth filed a concise statement on May 25, 2018. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 26, 2018.

> ***See also Ove v. Gwinn***, [264 F.3d 817 (9th Cir. 2001)] (complaint that blood samples in DUI cases were taken by persons not qualified to take such samples, alone, did not constitute a Fourth Amendment violation).
>
> In addition, the title of the governing subsection relied on by [Acquaviva], Section 1547(c), implicates the *admissibility* of the evidence and not whether it was lawfully obtained.
>
> …
>
> [Acquaviva]'s later averments, speculating on whether the paramedic used the correct vein and/or whether there were attempts by the paramedic to avoid contamination, are all matters that go to the integrity of the blood sample tested.  Thus, like a chain-of -custody challenge, these speculations go to the weight, not the admissibility of the evidence.  ***See Alerie***, ***supra***.  They certainly do not implicate any constitutional violation, nor has [Acquaviva] actually avered [sic] an actual constitutional violation, as stated previously.
>
> Accordingly, insofar as the qualification of the technician who drew [Acquaviva]'s blood implicates the admissibility at trial of the blood test results, the Commonwealth should be afforded the opportunity to proceed to trial at which such qualifications may be established.  Requiring the Commonwealth to present such evidence in order to survive a suppression motion is wholly without legal authority or precedent.

*Id.* at 22-25 (reproduced record citations omitted; italics in original).

In rejecting the Commonwealth's argument, the trial court found the following:

> The issue before the Court, the consequences of the Commonwealth's failure to qualify the technician who drew the blood, is of first impression.  However, [Acquaviva]'s argument that the blood draw may implicate [Acquaviva]'s constitutional rights has reasonable merit and needs consideration.  As asserted by [Acquaviva], the failure of the Commonwealth to develop a record to show that the technician was qualified may, for example, constitute a violation of [her] right to freedom from unreasonable

- 5 -

search and seizure under Article I, Section 8 of the Pennsylvania Constitution.

> Presented with a possible violation of a constitutional right, without precedence as guidance, the Court felt it necessary to safeguard [Acquaviva]'s [c]onstitutional [r]ight.

> Being that this is a case of first impression without any express guidance, the Court did not "ignor[e] or misappl[y] the law." Further, it was not manifestly unreasonable or biased, for the Court, while considering this novel issue, to preserve [Acquaviva]'s constitutional right rather than disregard it.

Trial Court Opinion, 6/26/2018, at 5-6.

In addressing this issue, we are guided by the following: Pennsylvania Rule of Criminal Procedure 581 provides: "The defendant's attorney … may make a motion to the court to suppress any evidence alleged to have been obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(A). Further, Rule 581 states: "At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights, or in violation of these rules or any statute, and shall make an order granting or denying the relief sought." Pa.R.Crim.P. 581(I). The comments to Rule 581 further reveal:

> The rule is designed to provide one single procedure for the suppression of evidence alleged to have been obtained in violation of the defendant's rights. The first revision of this rule extended its coverage to violation of the fourth, fifth, and sixth amendments of the Constitution of the United States; such as those proscribed by **Mapp v. Ohio**, 367 U.S. 643, 81 S.Ct. 1684 (1961); **Escobedo v. Illinois**, 378 U.S. 478, 84 S.Ct. 1758 (1964); **Jackson v. Denno**, 378 U.S. 368, 84 S.Ct. 1774 (1964); **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602 (1966); **United States v.**

> ***Wade***, 388 U.S. 218, 87 S.Ct. 1926 (1967); and ***Gilbert v. California***, 388 U.S. 263, 87 S.Ct.1951 (1967). Later Pennsylvania cases such as ***Commonwealth v. Futch***, 447 Pa. 389, 290 A.2d 417 (1972), sanctioned the use of Rule 581 to test certain violations of Pennsylvania Rules of Criminal Procedure; however, ***Commonwealth v. Murphy***, 459 Pa. 297, 328 A.2d 842 (1974), questioned whether the rule in its earlier form permitted such a challenge. The rule was therefore further revised in 1977 **to permit use of the suppression motion to test admissibility of evidence where the issue is the method by which the evidence was obtained**. The rule merely provides a vehicle by which the court may determine the issues involved and sets the time at which the application is to be made. The rule and the 1977 revision do not purport to define or expand the basis on which suppression may be had. . . . In addition, the order of the judge determining admissibility is to be final and binding at trial, absent newly discovered and hitherto undiscoverable evidence.

Pa. R. Crim. P. 581, *Comment* (emphasis added).

Moreover, it merits mention the "Fourth Amendment to the [United States] Constitution and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." ***Commonwealth v. Evans***, 153 A.3d 323, 327 (Pa. Super. Ct. 2016), *quoting* ***Commonwealth v. McAdoo***, 46 A.3d 781, 784 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013). "The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions." ***Evans***, 153 A.3d at 327-328, *quoting* ***Commonwealth v. Kohl***, 615 A.2d 308, 315 (Pa. 1992).

In ***Missouri v. McNeely***, 569 U.S. 141 (2013), "a plurality of the United States Supreme Court explained that, because a blood draw unquestionably is a search within the meaning of the Fourth Amendment, a warrant generally

is required, unless one of the exceptions to the warrant requirement applies."

***Commonwealth v. Myers***, 164 A.3d 1162, 1166 (Pa. 2017). In ***Birchfield***

***v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160 (U.S. 2016),

> the Supreme Court addressed the constitutionality of warrantless searches of breath and blood under the Fourth Amendment, specifically with regard to the search-incident-to-arrest and consent exceptions to the warrant requirement. The Court concluded that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving[,]" but "reach[ed] a different conclusion with respect to blood tests." ***Id.*** at 2184. Because obtaining a blood sample is significantly more intrusive than a breath test, the Court determined that a blood test may not be administered as a search incident to arrest. ***Id.*** at 2185.

***Myers***, 164 A.3d at 1168.

As such, in accordance with Rule 581 and case law, Acquaviva was within her constitutional right and was permitted to use the suppression motion to test the admissibility of the blood draw evidence where the issue was the method by which the evidence was obtained – that the blood draw was a search with constitutional protections, and the individual who drew her blood acted improperly and was not qualified. Pa.R.Crim.P.581, *Comment*.[3] Indeed, in her motion to suppress, Acquaviva argued:

---

[3] We liken this case to situations where defendants file motions to suppress, arguing that officers failed to adhere to the knock and announce rule in residential search and seizure cases – the method used by the officers was improper and served as the basis of the defendant's motion to suppress. ***See i.e.***, ***Commonwealth v. Kane***, 940 A.2d 483, 485 (Pa. Super. 2007) (Commonwealth appeal from order which suppressed evidence where court found knock and announce rule was violated), *appeal denied*, 951 A.2d 1161 (Pa. 2008).

> While there is no legal requirement in Pennsylvania that a blood draw for the purpose of chemical testing of blood alcohol be conducted by a licensed doctor or nurse, there is no evidence that the individual taking the blood was qualified to do so and used approved equipment. In fact, the Affidavit of Probable Cause reflects that paramedics (i.e. plural) conducted a blood draw without any information as to why more than one individual drew blood. If more than one blood draw occurred it would be a Fourth Amendment violation. ***See McFarren vs. Commonwealth of Pennsylvania, DOT***, 525 A.2d 1185 Pa. 1987). ***Also see*** Article I, Section 8 of the Pennsylvania Constitution.

Motion of Defendant, Elaine T. Acquaviva, for Suppression of Evidence, 12/21/2017, at ¶ 7.

In ***Commonwealth v. Culp***, 548 A.2d 578 (Pa. Super. 1988), the Commonwealth appealed "an order by which the lower court granted [the defendant]'s motion to suppress a hospital record containing the results of his blood alcohol test taken immediately following his arrest for driving under the influence of alcohol." ***Id.*** at 579. In his motion to suppress, the defendant "challenged the manner in which the test result was obtained and specifically alleged that the result was obtained in violation of his rights under the statutes and laws authorizing such tests and under the constitutions of the United States and the Commonwealth of Pennsylvania." ***Id.*** The Commonwealth argued:

> the question of the accuracy of the blood test result and its admissibility under the Business Records Act were not properly before the suppression court and were issues to be decided at trial. This claim is based on its contention that only claims of constitutional violation in the gathering of evidence are the proper subject of a suppression proceeding.

*Id.* at 580-581. In applying the prior suppression rule, Pa.R.Crim.P. 323, which is substantially similar to Rule 581 in relevant parts, a panel of this Court held:

> This extension of the use of Rule 323 is logically consistent with constitutional claims as a due process claim may be proven by a showing that the state has failed to follow the rules of procedure or other statutory requirements. *Commonwealth v. Povish*, 479 Pa. 179, 387 A.2d 1282 (1978); *Commonwealth v. Simmons*, 295 Pa. Super. 72, 440 A.2d 1228 (1982). Therefore, **we find no error on the part of the lower court in entertaining appellee's challenge to the method used by the Commonwealth in gathering the blood results in this case**.

*Culp*, 548 A.2d at 581 (emphasis added). In *Culp*, the facts were more attenuated than in the present case because the challenge concerned the admissibility of hospital records concerning the blood test whereas here, the contention involves the actual blood draw. Accordingly, the trial court did not err in entertaining Acquaviva's suppression motion, challenging the method used by the Commonwealth to gather her blood.

Nevertheless, while it was proper for Acquaviva to raise the argument in a motion to suppress, the success of her contention turns on the basis of her suppression claim and the Commonwealth's remaining assertion on appeal. The Commonwealth contends the trial court erred and/or abused its discretion in suppressing Acquaviva's blood alcohol results based on a finding that the Commonwealth failed to introduce evidence of the qualifications of the person who drew Acquaviva's blood because such qualifications are not specifically required under Pennsylvania law to admit the results of a blood

test. *See* Commonwealth's Brief at 12. The Commonwealth notes that in Acquaviva's motion to suppress, she only sought suppression of the blood alcohol results in connection with whether the paramedic that drew her blood was a "qualified person" who used "approved equipment" pursuant to Section 1547(c). Relying on **Commonwealth v. Allen**, 575 A.2d 131 (Pa. Super. 1990), *appeal denied*, 594 A.2d 311 (Pa. 1990), the Commonwealth contends the requirements set forth in Section 1547(c) do not apply to the qualifications of the person who draws the blood sample in DUI cases, but rather only to the individual who conducts the actual chemical testing of the blood. **See** Commonwealth's Brief at 14. It states:

> Despite this, the suppression court found that the Commonwealth was otherwise required to introduce and establish at the suppression hearing the qualifications of the paramedic who drew [Acquaviva]'s blood. The suppression court relied solely on this Honorable Court's isolated statement in **Allen** that, "[i]f a driver is taken to a hospital for a blood sample in a DUI case, the Commonwealth must show that the blood sample was withdrawn by a hospital employee who was qualified to take blood samples." **Allen**, at 133. The suppression court's reliance on same is misplaced.

Commonwealth's Brief at 15-16 (some citations and emphasis removed).

Moreover, the Commonwealth alleges:

> First, this Court confirmed in **Allen** that the qualifications for a person conducting a blood draw need not be met by § 1547(c), thus defeating [Acquaviva]'s actual suppression claim, as stated above.
>
> Second, this Court in **Allen**, respectfully, cited no actual statutory provision or other authority for the conclusion that "the Commonwealth must show that the blood sample was withdrawn by a hospital employee who was qualified to take blood samples,"

- 11 -

other than a possible reference to requirements for hospitals under the Clinical Laboratory Act. Further, there is no Pennsylvania statute found by the Commonwealth, or identified by [Acquaviva] or the suppression court, which sets forth or requires a certain minimum qualification for each person who withdraws blood for DUI cases, or that requires the showing of such qualifications before the evidence may be admitted.

Third, the Commonwealth ha[s] found no appellate case citing **Allen** for this specific proposition, or otherwise requiring the Commonwealth to prove the qualifications of the person drawing blood. To the contrary, this Court stated in **Commonwealth v. Sullivan**, 581 A.2d 956 (Pa. Super. 1990), decided after **Allen**, that:

> When determining whether blood alcohol test results were properly admitted, we are primarily concerned with the qualifications of the person performing the blood test and the equipment used []; whether the laboratory was licensed and approved by the Department of Health, [75 Pa.C.S. §1547(c)(2)]; and the chain of custody[.]

**Id.** at 959. This Court further stated that "blood alcohol test results were properly admitted into evidence without the presence of the technician who performed the test." **Id.** at 958 (internal citation omitted). "It is because a blood alcohol test is basic and routine and, therefore, highly reliable, that the safeguards ordinarily afforded by confrontation and cross-examination are not required." **Id. See Mahaney**, at 560 ("when the police observe the technician drawing the blood, the Commonwealth is not compelled to call the technician").

…

[Acquaviva] specifically did not challenge the qualifications of the laboratory or person who performed the testing.

Further, [Acquaviva] belatedly attempted to challenge during suppression the chain of custody, at the prompting of the suppression court. However, chain of custody matters are clearly not subject to suppression, but are trial matters that got to the weight, not the admissibility, of the evidence. **Commonwealth v. Alarie**, 547 A.2d 1252, 1255 (Pa. Super.1988).

- 12 -

Fourth, this Court in **Allen** did not state, nor has any case since **Allen** hold, that the Commonwealth's failure to establish the qualifications of the person who drew the blood for DUI testing was a matter subject to suppression pre-trial, or otherwise would preclude the admissibility of blood alcohol results.

Finally, there is no Fourth Amendment violation implicated based solely on the qualifications, or lack thereof, of a person who draws blood from a DUI suspect.

Commonwealth's Brief at 17-19 (reproduced record citations omitted).

Our standard of review regarding suppression issues is well-settled:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. **Commonwealth v. Miller**, 2012 PA Super 251, 56 A.3d 1276, 1278–79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

**Commonwealth v. Korn**, 139 A.3d 249, 252–253 (Pa. Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." **Commonwealth v. Elmobdy**, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004). Nevertheless, the suppression court's conclusions of law are not binding on an appellate court, and are subject to plenary review. **Commonwealth v. Johnson**, 969 A.2d 565, 567 (Pa. Super. 2009) (citations omitted).

*Commonwealth v. Byrd*, 185 A.3d 1015, 1019 (Pa. Super. 2018).

Section 1547 provides, in relevant part:

**(c)** *Test results admissible in evidence.* **—** In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

…

**(2)**

**(i)** Chemical tests of blood, if conducted by a facility located in this Commonwealth, shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health or by a Pennsylvania State Police criminal laboratory.  For purposes of blood testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L.1539, No.389), known as The Clinical Laboratory Act.

75 Pa.C.S. § 1547(c).

Here, the trial court found the following:

This Court does not dispute that 75 Pa.C.S.A. § 1547(c) "...focus[es] on the person performing the blood testing and the equipment used, not the technician drawing the blood."[3]

_____

[3] *Commonwealth v. Mahaney*, 373 Pa. Super. 129, 133, 540 A.2d 556, 559 (1988).

_____

However, the holding in *Mahaney* has been clarified by *Commonwealth v. Allen* which states that although the

- 14 -

technician who draws the blood does not need to meet the requirements of 75 Pa.C.S.A. § 1547(c)(2), the Commonwealth still must establish that the technician who drew the blood is also qualified to take blood samples.[4]  Further, the qualification of the technician who drew the blood was not at issue in **Mahaney** because the parties in **Mahaney** stipulated that the technician who drew the blood "was qualified for his position by the hospital..."[5]

_____

[4]  **Commonwealth v. Allen**, 394 Pa. Super. 127, 132-33, 575 A.2d 131, 134 (1990).

[5]  **Commonwealth v. Mahaney**, 373 Pa. Super. 129, 136, 540 A.2d 556, 559-60 (1988).

_____

These cases do not provide an explanation for the requirement that the technician who drew the blood be properly qualified because the parties in these cases properly qualified the technician.  Therefore, the technician who drew the blood must be qualified.

The facts here are distinguishable from **Mahaney**.  Here, there is no qualification on the record of the technician who drew the blood from [Acquaviva] nor is there any evidence to support a finding that the technician was qualified.  Thus, the Commonwealth failed to meet its obligation to develop a record qualifying the technician who drew the blood.

Trial Court Opinion, 6/26/2018, at 3-4.

We disagree with the trial court for several reasons.  First, we reiterate as both parties and the trial court acknowledge, Section 1547(c)(2) is focused solely on the chemical tests of the blood and speaks nothing to the actual drawing of the blood or the qualifications of the person who draws the blood. Accordingly, because Acquaviva based her suppression argument regarding

the blood draw on Section 1547(c)(2), her claim cannot succeed as the statute does not provide qualifications for that type of issue.

Second, the trial court relies on **Allen**, **supra**, for the principle that "although the technician who draws the blood does not need to meet the requirements of 75 Pa.C.S.A. § 1547(c)(2), the Commonwealth still must establish that the technician who drew the blood is also qualified to take blood samples." Trial Court Opinion, 6/26/2018, at 4. A closer review of the language in **Allen** reveals that while the technician who draws the blood may have to be qualified, the panel does not specify what type of qualification is required. Rather, the panel states:

> In the past, this court has held that § 1547(c) and its corresponding regulations "focus on the person performing the blood testing and the equipment used, not the technician drawing the blood." **Commonwealth v. Mahaney**, 373 Pa.Super. 129, 136, 540 A.2d 556, 559 (1988). If a driver is taken to a hospital for a blood sample in a DUI case, the Commonwealth must show that the blood sample was withdrawn by a hospital employee who was qualified to take blood samples. **That employee does not have to meet the requirements of 75 Pa.C.S.A. § 1547(c)(2)**.

**Allen**, 575 A.2d at 134 (emphasis added).

Therefore, without any statutory guidance or precedence regarding what qualifications are necessary for the individual who draws a defendant's blood in a DUI investigation, the Commonwealth cannot be penalized for

failing to meet an undefined burden in a suppression procedure.[4]  Further, it strains the common sense application concerning the realities of drawing blood that a Bensalem Rescue Squad member, who drew Acquaviva's blood, was not qualified to do so.  Indeed, Acquaviva does not allege that the purported unqualified blood draw led to incorrect results of the blood testing.  **See** Motion of Defendant, Elaine T. Acquaviva, for Suppression of Evidence, 12/21/2017, at ¶ 7.  Accordingly, because we conclude the trial court erred in granting Acquaviva's motion to suppress, we reverse the order on appeal and remand for further proceedings.

Order reversed. Case remanded for further proceedings.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/19

---

[4]    Moreover, it merits mention the allegations set forth in Acquaviva's suppression motion did not put the Commonwealth on notice that they needed to present testimony from that specific witness.

- 17 -