## Commonwealth *v.* Banks, Appellant.

402

Submitted May 3, 1973.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Louis Lipschitz* and *Joseph R. Danella,* for appellant.

*Linda West Conley, James T. Ranney,* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, November 26, 1973:

Appellant, James Banks, was tried by jury in the Court of Common Pleas of Philadelphia County, Criminal Division and found guilty of murder in the first degree. He was also convicted on four counts of aggravated robbery and assault and battery. Demurrers were sustained by the court to counts of aggravated assault and battery and the jury returned a verdict of not guilty on the final count of assault and battery. Arguments were heard before the court en banc on motions for new trial and in arrest of judgment and were denied. Thereafter appellant was sentenced to life imprisonment on the murder bill. Sentences on the other bills of indictment were suspended by the lower court. This case is before us on direct appeal.

Evidence adduced at the trial revealed that at approximately 11:00 p.m. on December 13, 1969 the appellant and three companions pursuant to an agreement went into the Penn Central 30th Street Station whereupon they assaulted Jacob Blank and robbed him of his wristwatch, a cigarette lighter, and $40 in cash. Appellant and his companions then sold the watch and divided the proceeds of the robbery among themselves. The four then went to a party arriving at approximately 1:00 a.m., December 14, 1969. While there appellant and two of the original group again agreed to engage in additional robberies. One of the group named Ford remained behind and his place was taken by Marshall Jones. Arriving again at 30th Street Station they assaulted Steven Kreloff on the station platform throwing him from the platform to the tracks below and robbing him of his wristwatch and $3 in cash. While appellant and his confederates were robbing Kreloff, the fourth man assaulted and robbed Harry Pollack at the other end of the platform station. Pollack was thrown from the platform to the tracks below as a result of which he fractured six ribs and later died of

multiple injuries received from the fall. The group then went to 15th and John F. Kennedy Boulevard where one of the group robbed Annie Thompson of her pocketbook containing $2.80 and in the process broke three bones in her face.

Appellant alleges numerous assignments of error which can be categorized according to sufficiency of the evidence, evidentiary objections, refusal to grant a mistrial, and objections to the court's charge to the jury.

## I. Sufficiency of the Evidence

Appellant's initial contention is that the evidence is insufficient to support a first degree murder conviction. Specifically, appellant contends that the statements of Anne Yancey and Earl Gallagher did not prove robbery, a necessary element to substantiate the Commonwealth's theory of felony-murder.

In adjudging a felony-murder, it is necessary to show that the conduct causing death was done in the furtherance of the design to commit the felony. *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A. 2d 290 (1972); *Commonwealth v. Redline*, 391 Pa. 486, 137 A. 2d 472 (1958); Perkins, "Malice Aforethought," 43 Yale L.J. 537 (1934). The victim's death must have been a consequence of a proven robbery. The testimony received from Anne Yancey described the decedent as having said he had been beaten and pushed onto the tracks. The testimony of Earl Gallagher related that the victim had stated that he had been down on the platform waiting for a train when some youth accosted him demanding money from him and when he said he had none pushed him onto the tracks. In addition to this testimony Norman McCray, a co-conspirator, testified that the attack upon the victim was pursuant to an agreed scheme to commit robbery against per-

sons that they would come upon. Further, appellant's own confession verified that one of the group went through the pockets of the victim as he laid helpless on the tracks. The record clearly establishes that there was present felonious intent to take money from the person of Harry Pollack and the accomplishment of that end was by means of violence which resulted in the injuries causing his death. *Commonwealth v. Simpson*, 436 Pa. 459, 260 A. 2d 751 (1970). Consequently, a verdict of murder in the first degree premised on a theory of felony-murder had ample support in the record.

## II. Evidentiary Objections

Appellant contends that the lower court erred in failing to suppress his confession. Specifically, he argues that the warnings given by the police were inadequate to fully inform him of his right to request the presence of appointed counsel while undergoing questioning. A review of the testimony received at the suppression hearing suggests otherwise. Appellant was told at 12:35 p.m. and at 2:00 p.m. that "You have a right to talk to a lawyer of your own choice before we ask you any questions and also to have a lawyer here with you while we ask you questions. If you cannot afford to hire a lawyer and you want one, we will see that you have one provided for you free of charge before we ask you any questions. Do you understand that you have a right to talk with a lawyer before we ask you any questions? Do you understand that if you cannot afford to hire a lawyer and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge?"

In addition appellant contends that his will was overborne rendering his confession involuntary when the questioning detective told him about statements

made by other participants in the crimes. We believe this contention cannot support a claim of involuntariness. In *Culombe v. Connecticut*, 367 U.S. 568 (1961) the United States Supreme Court set forth the test for determining the voluntariness of a confession. The court explained the test as follows: "Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity . . . impaired, the use of his confession offends due process." Id. at 602. In view of the fact that Bank's actual interrogation spanned less than four hours; was unaccompanied by physical violence; the appellant was 19 years old and had an 11th grade education; he was mentally alert and coherent; and the interrogator did not employ any trick designed to produce a false story, the resulting confession is voluntary. *Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968).

As this court recently stated in *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A. 2d 519 (1972), in reviewing the findings of a suppression court: "The question is one of fact initially to be determined by the trial court and where, as here, the suppression court's findings have ample support in the record, we cannot say that the court erred as a matter of law in concluding the confession was admissible." Id. at 44, 296 A. 2d at 524; see also, *Commonwealth v. Stafford*, 451 Pa. 95, 301 A. 2d 600 (1973).

Appellant next contends that the lower court erred in permitting testimony of a prior crime. The testimony at issue is that of Jacob Blank who stated that sometime around 11:50 p.m. on December 13, 1969 he was attacked and robbed in the concourse area of 30th Street Station by four young black males. The circumstances of the Blank robbery and the three robberies that occurred thereafter indicated a common

design and modus operandi relative to all four hap-. penings. The law of the Commonwealth is that evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes and the commission of one tends to prove the commission of the others and the identities of the parties charged with the commission. *Commonwealth v. Smith,* 443 Pa. 151, 277 A. 2d 807 (1971); *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955). The fact that one of the original conspirators dropped out after the Blank robbery and was replaced by another does not alter the fact that the robberies were part of a common scheme, plan or design and that the appellant had participated in the conspiracy from the beginning. This was not "a distinct crime" for which evidence could not be given against one who was being tried for another crime. *Commonwealth v. Foose,* 441 Pa. 173, 272 A. 2d 452 (1971). Moreover, it is noted that the appellant was on trial for the robbery of Jacob Blank in addition to the murder of Harry Pollack.

Appellant argues that the statements made by the decedent, Harry Pollack, to Anne Yancey and Earl Gallagher within minutes after his being assaulted were inadmissible as they were not part of the res gestae.

The rule permitting res gestae declarations to be introduced in evidence has been stated in *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A. 2d 291 (1966): "The principle is based upon the rationale that a spontaneous declaration of an individual who has recently suffered an overpowering emotional and shocking experience is likely to be truthful. See, I Henry, Penna. Evidence, §466 (1953). Such evidence is limited to declarations supporting the conclusion that the statements were spontaneous utterances of thought created by, or emanating from, the litigated act, and so near

in time thereto as to exclude the possibility that they were the product of premeditation or design. See, Commonwealth v. Noble, 371 Pa. 138, 88 A. 2d 760 (1952); Commonwealth v. Rumage, 359 Pa. 483, 59 A. 2d 65 (1948); and, Commonwealth v. Cupps, 157 Pa. Superior Ct. 341, 43 A. 2d 545 (1945). No definite time limit, or distance from the site of the crime, has been fixed by the courts in determining what spontaneous utterances are admissible as part of the res gestae. Each case has been judged on its own facts and circumstances; Commonwealth v. Stokes, 409 Pa. 268, 186 A. 2d 5 (1962), and cases cited therein. The length of time which has elapsed between when the declarations were uttered and when the occurrence took place is only one element to be considered in determining their spontaneity. See Commonwealth v. Noble, supra, and Commonwealth v. Harris, 351 Pa. 325, 41 A. 2d 688 (1945)." Id. at 70, 223 A. 2d at 293. In *Commonwealth v. Cheeks, supra* the statements in question which were held admissible were made by the victim forty-five minutes after the attack. In the case at bar it is clear that the entire series of statements was given within fifteen minutes or at the most twenty minutes after the attack had occurred. Reconstructing the picture as disclosed by the testimony, the conclusion is inevitable that the statements were spontaneously uttered, were directly related to the attack that had been perpetrated upon the decedent, and were not the result of reflection or design. The fact that some of the decedent's statements were made in response to questions posed to the victim by Yancey and Gallagher does not preclude their being spontaneous. *Commonwealth v. Edwards,* 431 Pa. 44, 244 A. 2d 683 (1968); see also, *Commonwealth v. Stokes, supra; Commonwealth v. Harris, supra.* Under these circumstances their admission in evidence was not error.

### III. Denial of Motion for Mistrial

Appellant contends that the lower court erred in denying his motion for mistrial because of remarks made by the assistant district attorney in her closing speech. Defense counsel alleged that the assistant district attorney said that Marshall Jones "got his justice" and that it was not necessary for the Commonwealth to present a photograph of the decedent showing the terrible wounds he sustained. These vague characterizations (which the assistant district attorney has denied having made) are insufficient to provide a basis for a mistrial. In the first instance, defense counsel had the burden of requesting that the closing arguments be transcribed, he chose not to make such a request. Act of January 8, 1960, P. L. (1959) 2116, §1, 17 P.S. §1802. Secondly, counsel had the obligation of setting forth in context and with sufficient illumination the statements he deemed offensive and prejudicial so an appellate court could make an intelligent judgment as to the nature and possible effect of the comments.

Appellant next contends that the lower court erred in denying his motion for mistrial when the jury was apprised as a consequence of the testimony of a detective that he was taken into custody on the homicide charge at the detention center. Appellant argues that this testimony had the effect of allowing the jury to infer that he had a prior criminal record.

In *Commonwealth v. Clark*, 453 Pa. 449, 309 A. 2d 589 (1973) this court said: "It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. It has been succinctly stated that '[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he

has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more liable to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.' " Id. at 452, 309 A. 2d at 590 (quoting *Commonwealth v. Allen,* 448 Pa. 177, 181-182, 292 A. 2d 373, 375 (1972)). In *Clark* we stated that a police officer's statement that the defendant had previously served time "in prison" implied a prior conviction for a serious offense, thus was prejudicial in that it permitted the jury to infer that the defendant had a prior criminal record. To warrant a characterization as prejudicial the testimony must convey to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense. In the case at bar the mere passing reference to the appellant's confinement did not supply a sufficient basis for a reasonable inference of prior criminal activity in view of the numerous crimes for which he was then on trial. The reference did not either expressly or by reasonable implication convey the fact of a prior criminal offense unrelated to the criminal episode for which he was then on trial. *Commonwealth v. Sharpe, supra.*

IV.   Objections to the Trial Court's Charge to the Jury

First, it argued that there was error in the court's charge on reasonable doubt. Specifically, appellant objects to the courts defining reasonable doubt as "the kind of doubt that would restrain a reasonable man or woman from acting in a matter of great importance to himself or herself." We find appellant's instant assignment devoid of substance. We recommended the very standard and instruction given in the instant case in *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552

(1963) and reaffirmed the approved instruction as recently as *Commonwealth v. Pearson,* 450 Pa. 467, 303 A. 2d 481 (1973).

In addition to the court's charge on reasonable doubt, the court pursuant to counsel's request charged the jury as follows: "The phrase 'beyond a reasonable doubt means that you must be persuaded, about the most important concern of your life. *You must be persuaded to a moral certainty.* I so charge you." The court in accepting appellant's requested charge went further than any direction of this Court in the appellant's favor. There is no basis for appellant to object.

Appellant argues that the court erred in charging the jury that the accomplice's testimony should be scrutinized very carefully where not corroborated. He contends that this admonition to the jury removed the necessity to scrutinize the entire testimony of the accomplice with caution. That which the appellant now objects to is in fact the basis of the doctrine. The concern was that a jury should not embrace testimony offered by an accomplice without a full understanding of the unreliability of the source of that evidence. It was recognized that a danger existed where there was no other evidence to support the testimony of the accomplice. It was for this reason that under these circumstances, the jury also would be specifically cautioned. Where, of course, there is corroboration the concern is not as great and the normal rules of creditability obtain. See, *Commonwealth v. Elliot,* 292 Pa. 16, 23, 140 Atl. 537, 539 (1928); *Commonwealth v. Turner,* 367 Pa. 403, 80 A. 2d 708 (1951).

Finally, it is argued that the court erred in asking counsel in the presence of the jury whether he had any objections to the charge. Rule 1119(b) of the Pa. R. Crim. P. requires that objections to the court's charge to the jury be made beyond the hearing of the jury. The design of the rule is to prevent the jury from ac-

tually hearing the content of the specific objection to the charge and the subsequent ruling. Although, a request was made by the court for counsel's objections to the charge in the presence of the jury, the actual substance of the objection was made out of the hearing of the jury as required by the rule.

Judgment of sentence affirmed.