489 A.2d 929

**COMMONWEALTH of Pennsylvania**

**v.**

**Robert F. CULLEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 1983.

Filed March 15, 1985.

234

236

Richard H. Knox, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTEMURO, WATKINS and CERCONE, JJ.

WATKINS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Criminal Division, of Philadelphia County, by the defendant-appellant, Robert F. Cullen, after his conviction in a jury trial of six counts of robbery and conspiracy. Post-verdict motions were denied and the defendant was sentenced to a total of thirty (30) to sixty (60) years imprisonment. Defendant's original appeal to this Court was non-prossed[1] and this nunc pro tunc appeal followed.

1. The direct appeals of co-defendants Adams and Wallace were denied by this Court in *per curiam* opinions at *Commonwealth v. Adams,* 289

The defendant was arrested on July 25, 1975 and charged with the armed robberies of five supermarkets and one restaurant in Philadelphia as well as conspiracy for those crimes. The defendant was tried with two co-defendants, John Adams and George Wallace. The evidence at trial established that between January 30, 1973 and June 21, 1974, the defendant and his co-defendants conspired to commit a series of robberies. In addition to the Philadelphia robberies, the defendant allegedly committed at least an additional fourteen robberies in the outlying counties of Pennsylvania and New Jersey. All of these robberies, however, were marked by a distinctive *modus operandi.*

On appeal, the defendant raises nine issues which we will discuss individually.

## I. RULE 1100.

Appellant argues that the court erred in denying his motion to dismiss the charges in accordance with Pa.Rule of Criminal Procedures 1100 based upon two contentions: (1) Appellant was not brought to trial within 180 days of the issuance of the warrant for his arrest; and (2) The time period was not validly extended beyond the 180 day period.

With respect to appellant's first contention, Pa.Rule of Criminal Procedure 1100 requires that a defendant arrested after June 30, 1974 be tried within 180 days from the date the complaint was filed. Where defendant is arrested pursuant to a warrant issued on the basis of a complaint, the complaint is deemed to be "filed" when it is presented to the court for the purpose of having the warrant issued. *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977). The record clearly indicates the criminal complaint on which process issued was presented on June 27, 1975 to Judge George Woods of the Municipal Court of Philadelphia. Appellant's claim is without merit.

With respect to appellant's second contention, Rule 1100 places the obligation on the Commonwealth to com-

Pa.Superior Ct. 576, 429 A.2d 71 (1980) and *Commonwealth v. Wallace,* 257 Pa.Superior Ct. 620, 390 A.2d 299 (1978).

mence trial no later than the prescribed time, unless excused upon showing of due diligence. *Commonwealth v. Lamonna,* 473 Pa. 248, 373 A.2d 1355 (1977); *Commonwealth v. Mayfield,* 469 Pa. 214, 364 A.2d 1345 (1976). Section (c) of Rule 1100 provides the Commonwealth with an adequate procedural method to protect its right to effectuate a timely prosecution by filing a timely request for an extension of the time for the commencement of trial, where good cause for such a request is present. *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976).

■ Defendant was a member of a group involved in an intricate scheme of criminality which was the trademark of the group which, in the interest of justice and judicial economy, dictated that the defendant should be tried with his co-conspirators. *Commonwealth v. Hirsch,* 225 Pa.Superior Ct. 494, 311 A.2d 679 (1973); *Commonwealth v. Schwartz,* 210 Pa.Superior Ct. 360, 233 A.2d 904 (1967). *See* Pa.R.Crim.Pro. 219. Defendant must have realized the need of a joint trial and never applied for a severance.

■ Due to significant defense delays resulting from the multiple defendants, the Commonwealth filed a petition to extend the original rule date of December 24, 1975. We hold that the first extension and all subsequent extensions were preceded by a timely request and granted for legally sufficient reasons by the court.

■ A petition for extending the date in which a trial must be commenced must be filed before the expiration date or any extension thereof. Pa.R.Crim.Pro. 1100(c); *Commonwealth v. Woods,* 461 Pa. 255, 336 A.2d 273 (1975); *Commonwealth v. Taylor,* 473 Pa. 400, 374 A.2d 1274 (1977). Each of the petitions filed in this case, which resulted in the granting of a new run date, was timely filed. The petition filed February 27, 1976, which resulted in the order extending the date to March 29, 1976, preceded the newly established date of February 29, 1976. The application of March 29, 1976 was also timely filed.

■ Defendant asserts that his failure to receive proper notice of the first extension hearing as required by Section (c) of Rule 1100 renders invalid all extension of time. Rule 1100(c) requires the presence of the appellant or his counsel at any hearing to extend the "run date". A valid extension cannot be granted in the absence of the appellant or his counsel. *Commonwealth v. Ray,* 240 Pa.Superior Ct. 33, 360 A.2d 925 (1976); *Commonwealth v. Patrick,* 487 Pa. 15, 407 A.2d 382 (1979). Defendant's counsel admits he was notified of the first extension hearing and served with a copy of the petition. Defendant's failure to appear or request a continuance is deemed a consent to the extension. *Commonwealth v. Taylor,* 473 Pa. 400, 404–405, 374 A.2d 1274 (1977); *Commonwealth v. Costigan,* 272 Pa.Superior Ct. 520, 525, 416 A.2d 1018 (1979); *Commonwealth v. Frank,* 263 Pa.Superior Ct. 452, 398 A.2d 663 (1979). This is especially so where the sole contention is that the order was entered ex parte and he does not posit that he could have presented evidence which would have made for a different result. *Commonwealth v. Taylor,* supra. Appellant's claim is without merit.

■ Appellant asserts the Commonwealth failed to establish due diligence in bringing defendant's case to trial, which would justify the grant of its extension petitions. A timely application is properly granted when the trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth. Pa.R.Crim.Pro. 1100(c); *Commonwealth v. Mayfield,* supra; *Commonwealth v. Gibson,* 248 Pa.Superior Ct. 348, 375 A.2d 132 (1977); *Commonwealth v. Jenkins,* 248 Pa.Superior Ct. 300, 375 A.2d 107 (1977).

■ On each application for extension, there was sufficient evidence that, despite due diligence, the case could not be tried. Trial could not be held before December 24, 1975, the original run date, because defendant Adams and counsel for defendant Wallace were unavailable: the former in flight, and the latter undergoing surgery. These delays, while not directly chargeable to defendant under Pa.R.Crim.

Pro. 1100(d), justified granting the Commonwealth's first extension petition. *Commonwealth v. Wharton,* 250 Pa. Superior Ct. 25, 31, 378 A.2d 434 (1977); *Commonwealth v. Jenkins,* 248 Pa.Superior Ct. 300, 305, 375 A.2d 107 (1977).

■ When the original extended date proved too optimistic, the Commonwealth timely filed its second extension petition. As the lower court pointed out: "The condition necessitating the first extension still prevailed. Defendant Adams and counsel for Wallace had just returned to the judicial system; Adams on February 6, 1976, and counsel on February 2, 1976. A lot of time otherwise available for trial had been consumed awaiting the readiness of the defense, a justification for granting an additional extension to March 29, 1976. (Citing cases)"

■ Trial was then scheduled to commence on March 22, 1976. Trial could not commence that day due to defendant's filing a *Ross* motion the same day to dismiss the indictment for delay in defendant's arrest. The *Ross* motions was listed for disposition at the time of trial on March 29, 1976. For the purpose of the prompt trial rule, the case is deemed to have begun when the trial judge undertakes to hear any motion which had been reserved to be heard at time of trial. *Commonwealth v. Robinson,* 238 Pa.Superior Ct. 508, 362 A.2d 1005 (1976); Pa.R.Crim.Pro. 1100 (Comment).

■ When the court convened on March 29, 1976, the Commonwealth filed a petition for extension as a precautionary measure against the elapsing of the run date. The application for extension was timely filed and was properly granted based on the prevailing and controlling standards of inability to meet the trial date despite due diligence.

## II. MOTION TO DISMISS FOR PRE-ARREST DELAY.

Defendant asserts the trial court improperly denied defendant's motion to dismiss the indictments against defendant on the ground of pre-arrest delay. Defendant claims he was denied due process of law because police had probable

cause to arrest him at the end of April, 1975, but did not secure an arrest warrant until June 27, 1975 (when the arrest warrant was issued) and did not arrest him until July 25, 1975.

■ Defendant must establish actual prejudice resulting from the delay to make a due process claim concrete and ripe for adjudication. *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978). Once defendant has shown actual prejudice, the court will inquire into the reason for the delay.

■ The defendants themselves caused the delay between the arrests and the criminal incidents. Their assertion that better police proficiency might have resulted in their earlier apprehension contradict their planned intentions of remaining anonymous and undiscovered. In the absence of showing that the police deliberately and unnecessarily delayed the arrest to the prejudice of the defendants, the delay between the criminal episode and the arrest has no significance. *Commonwealth v. Bunter,* 445 Pa. 413, 282 A.2d 705 (1971); *Commonwealth v. DeRose,* 225 Pa.Superior Ct. 8, 307 A.2d 425 (1973); *Ross v. United States,* 349 F.2d 210 (D.C.Cir.1965). Not only was there no deliberate "police" delay, but the evidence does not indicate that the defendants were prejudiced by the delay in any way. A mere allegation and assumption that delay dims memories is insufficient to establish delay upon which to base dismissal of an indictment.

■ Appellant asserts that he was prejudiced by the delay because he was unable to prepare a defense to the charges during the period of time from which he was told he was going to be arrested until two months later when he was arrested. A delay in the arrest of a defendant for legitimate police purposes does not result in a denial of the defendant's right to due process of law, unless the delay prejudices the defendant's ability to defend himself. *Wilson v. United States,* 409 F.2d 184 (9 Cir.1969). The record

does not indicate that the delay prejudiced defendant's ability to defend himself.

## III. ADMITTING "MODUS OPERANDI" EVIDENCE.

Appellant argues that the trial judge by allowing the Commonwealth to present *modus operandi* evidence had abused his discretion and that because of this the appellant's rights to a fair trial and due process of the law were abridged.

The appellant and his co-defendants had been charged with six counts of armed robbery and conspiracy to commit robbery in the Philadelphia area which occurred in 1973 with the exception of one which occurred in 1975. Appellant had not been identified as the perpetrator of any of these crimes, however, the planning and execution of the crimes was detailed by an informing witness, Sandra Cornish. Ms. Cornish was an accomplice both before and after each of the Philadelphia robberies. Appellant and his co-defendants were also indirectly identified by victims of these six robberies. Appellant concedes that given the testimony of Sandra Cornish, if believed by the jury, coupled with corroborating facts that were detailed by the victims of the robberies, there was sufficient evidence to convict the defendants during the trial of the six robbery charges. What the appellant objects to is the introduction of evidence of fourteen other robberies which had occurred outside the Philadelphia area in 1973 and 1974. Over objection of appellant's counsel the trial judge permitted the Commonwealth to prove these robberies as *modus operandi* evidence; evidence which tended to prove a common scheme or plan on the part of the defendants which related to six crimes with which the defendants had been charged.

Concerning four of the fourteen robberies, there had been testimony by the victims which would have identified at least one of the three defendants who had been on trial. Appellant argues, however, that as to the remaining ten robberies which were proven during the trial, there was no valid identification testimony which added anything to the

evidence the Commonwealth had already presented. Appellant claims that the prejudicial impact of allowing evidence of these robberies far outweighs its probative value.

Appellant, in challenging the exercise of discretion by the trial court bears a heavy burden. The standard which must be met is a stringent one. "The abuse of discretion is not merely an error in judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence on the record, discretion is abused." *Commonwealth v. Braithwaite*, 253 Pa.Superior Ct. 447, 385 A.2d 423 (1978).

As a general rule, evidence of one crime is not admissible to prove the commission of another. *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Wilson*, 444 Pa. 117, 281 A.2d 864 (1971). Reference to a defendant's other criminal conduct is incurably prejudicial. *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Williams*, 230 Pa.Superior Ct. 72, 327 A.2d 367 (1974). However, where the ends of justice require it and the evidence is otherwise trustworthy and relevant, the Common Law has provided a necessary exception to this rule. Where evidence of other crimes has relevance to crimes being tried, where it tends to prove such elements as motive, intent, common scheme, plan or design embracing the commission of crimes so related to each other that proof of one tends to prove the others or where crimes are so clearly identical in character and method as to earmark them as the handiwork of the person being tried— evidence of other crimes is admissible for such limited purposes. *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973); *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1975).

Because there had not been any direct identification of the appellant and his co-defendants, the Commonwealth's evidence revolved primarily around the testimony of Sandra Cornish through her recollection of conversations with ap-

pellant and his co-defendants. However, her testimony would be carefully scrutinized because of her participation in the scheme.

The Commonwealth believed the need for corroboration was essential. The Commonwealth claimed that by introducing evidence of other robberies it sought to corroborate Ms. Cornish's testimony. It also sought to show that the *modus operandi* was so similar that proof of one tended to prove the other, to establish identity of appellant and his co-defendants, prove the conspiracy, introduce physical evidence obtained in non-Philadelphia robberies which was also used in previous Philadelphia robberies and explain the time lapse between the six robberies.

▬▬▬ Because there were no eye witnesses to the crimes charged, the Commonwealth could only prove a conspiracy and connect the robberies to the perpetrators by showing the web of circumstances manifested in their *modus operandi*, the modus operandi consisting of other crimes in circumstantial evidence relevant to prove the scheme, plan (conspiracy) and the identity of the perpetrators. *Commonwealth v. Banks*, supra; *Commonwealth v. Lasch*, supra. Criminal conspiracy can seldom, if ever, be proven except by circumstantial evidence—evidence from which the ultimate fact is to be inferred. Where the ultimate facts, the terms, the objectives, the scope of an unlawful agreement are to be inferentially drawn from other facts and circumstances—there is a need for greater latitude in admission of the basic evidence. *Commonwealth v. Cohen*, 203 Pa.Superior Ct. 34, 199 A.2d 139 (1964).

In the instant case, the challenged evidence was determined by the lower court to be relevant, probative and necessary to prove the identity of the perpetrators as well as the terms and objectives of their criminal scheme.[2] In

2. The evidence presented illustrated the common scheme in the perpetration of these crimes. In each of these robberies an automobile had been stolen and "hot wired". The police received unfounded reports of crimes in progress at the same time. The description of the

his discretion, the trial court judge determined that the proffered evidence came within the exception to the general rule.

As to the claim of the evidence's prejudicial impact outweighing its probative value, the trial judge specifically instructed the jury that they were not to conclude from this evidence that the defendant was guilty of the crimes charged or predisposed to criminality. This served to dissipate any prejudice which inhered in the evidence.

There is no indication from the record that the trial judge had overridden or misapplied the law, or that this was a result of partiality, prejudice or ill will. The judge acted within his discretion, therefore, the appellant's claim is without merit.

## IV. MOTION TO SUPPRESS EVIDENCE OBTAINED BY PENNSYLVANIA STATE POLICE OFFICER REAP.

Appellant argues that the evidence obtained by Trooper Reap during an encounter with appellant on the Pennsylvania Turnpike should have been suppressed as the product of an unlawful stop.

There are two parts to appellant's argument. (1) That Officer Reap did not have personal knowledge of all the facts constituting probable cause at the time of the stop thereby making it unlawful. (2) Since the encounter did not result in an arrest, the evidence obtained during the encounter should be suppressed.

■■■ In regard to appellant's first contention, cases in the past have held that an arresting officer need not have

perpetrators was the same; one taller approximately five feet six inches and one was shorter approximately five feet four inches, both wore masks and gloves. The description of the gun was the same—it was a gun with a long barrel (six to eight inches) with a white handle. There were also common factors in how the robberies were committed. One perpetrator would wait near the counter and have the cash drawer emptied while the other scaled a partition to get to the manager's office and the safe. Then both perpetrators exited and got into a car waiting outside being driven by a third person. Subsequently, the same car was found abandoned, still running, in the vicinity of the robbery.

personal knowledge of the facts which support probable cause for arrest. He may reasonably rely upon radio transmissions ordering an arrest so long as the officer issuing the order has reasonably trustworthy information sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing an offense. *Commonwealth v. Riley*, 284 Pa.Superior Ct. 280, 425 A.2d 813 (1981); *Commonwealth v. Wagner*, 486 Pa. 548, 555, 406 A.2d 1026, 1030 (1979); *Commonwealth v. Kenney*, 449 Pa. 562, 567, 297 A.2d 794, 796 (1972).

Although Officer Reap did not have personal knowledge of facts constituting probable cause he relied on a bulletin when stopping the appellant. Therefore the appellant's claim is without merit.

Having effectuated a proper stop, Officer Reap told appellant why he had been stopped and advised him of his *Miranda* rights. He then asked the appellant to identify himself and inquired into his activities during the time the crime was allegedly committed. He was correct in doing this. *Commonwealth v. Browne*, 221 Pa.Superior Ct. 368, 292 A.2d 487 (1972). At this time a turnpike toll ticket was in plain view on the front seat and appellant voluntarily divulged the location of seven twenty dollar bills. Once an officer has made a valid stop or arrest, he may seize any evidence which is in plain view. *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414 (1975); *Commonwealth v. Harper*, 233 Pa.Superior Ct. 294, 334 A.2d 761 (1975); *Commonwealth v. Clelland*, 227 Pa.Superior Ct. 384, 323 A.2d 60 (1974).

Although appellant had been released by Officer Reap after being detained for two and one half hours, the evidence he gathered during this time is admissible because it had been in plain view and had been obtained incident to a lawful stop.

## V. ADMITTING THE IDENTIFICATION TESTIMONY OF LAMAR QUICKLE AND JUDITH DI PRETORE.

The appellant claims that the trial court erred in admitting the identification testimony of Mr. Quickle and Ms.

DiPretore on the ground that it was the product of an unconstitutionally suggestive confrontation.

The identification testimony of Mr. Quickle and Ms. DiPretore related to a June 21, 1974 robbery of a supermarket in Delaware County. The police had arrived during the robbery and in the ensuing confusion appellant had lost his mask. It was at this time that Mr. Quickle and Ms. DiPretore had an opportunity to see the appellant. Subsequently the witnesses were shown a ten photo array but failed to identify the appellant in any of these photographs. During a luncheon recess on April 23, 1976, Mr. Quickle and Ms. DiPretore were brought into the courtroom by Detective O'Shea to speak to the prosecutor. Testimony indicated that the witnesses came without expectation that defendants would still be in the courtroom of that they would be able to identify any of the defendants. At the time the witnesses entered, appellant, his co-defendants and their attorneys were present in the front of the courtroom. The witnesses upon seeing appellant exclaimed "that's the man". It was a result of this confrontation that witnesses Quickle and DiPretore testified that they recognized the appellant as the person who had robbed the supermarket. Appellant claims that these circumstances for identification were improper and suggestive.

The lower court judge received testimony at a mid-trial suppression hearing concerning why the witnesses were present at that particular time and how the witnesses had identified the appellant. The trial judge had accepted the testimony of Detective O'Shea and the witnesses as true and determined that given the circumstances this was not an improper or suggestive viewing.

First it must be stated that it is not the task of the court to engage in de novo evaluation of testimony. *Commonwealth v. Lutz*, 492 Pa. 500, 424 A.2d 1302 (1981). The trial court after hearing testimony, determined that there was nothing in the encounter to suggest deliberate staging. It also determined that there was no impermissibly suggestive factor in the picture framed by the group of five or six men from which he was recognized and that the spontaneity of

the recognition negated any suggestion that the identifications were the product of consultation and reflection of the two witnesses. This Court will not re-evaluate the testimony of these findings. Rather, accepting them as true, we will determine whether admitting this evidence was proper.

 This Court has consistently held that where it has been determined that the confrontation between the accused and the accusor is uncontrived, any spontaneous identification is proper. *Commonwealth v. White*, 447 Pa. 331, 290 A.2d 246 (1972); *Commonwealth v. Wilcox*, 481 Pa. 284, 392 A.2d 1294 (1978). Therefore, the trial court did not err in admitting this identification testimony. Appellant's contention is without merit.

## VI. PROSECUTORIAL MISCONDUCT AND COMMENT BY WITNESS, DETECTIVE O'SHEA.

Appellant claims that the court should have granted a mistrial based on a remark made by the prosecutor in his opening statement and on a comment by Detective O'Shea that he was assigned to the major crimes squad.

 During his opening statement the prosecutor had compared what he intended to prove in this case to the series of crimes committed by "the Boston Strangler", "Jack the Ripper" and "The Kissing Bandit". The trial court addressed both the timeliness of the objection and the prejudicial effect of these remarks. The court determined that assuming arguendo the timeliness of the objection the remarks were not so prejudicial as to be incurable. Moreover he specifically instructed the jury on the purpose of these remarks. The trial court had adequately addressed these issues and found appellant's claim to be without merit. Upon review we find it also to be without merit.

 As to Detective O'Shea's reference that he was assigned to the Major Crimes Unit, the trial court had struck the reference and advised the jury to disregard it. The trial judge stated that even if it were prejudicial it was not such that it was incurable. Upon review of the record we agree that appellant's claim is without merit.

## VIII. PERMITTING THE COMMONWEALTH TO EXHIBIT A CHART THROUGHOUT THE COURSE OF THE TRIAL.

Appellant claims that the trial judge abused his discretion, to the prejudice of the appellant, by permitting a chart to be constantly on display throughout the trial and by permitting the Assistant District Attorney to announce each time he was placing a check on the chart or removing a label from it to uncover information which was referred thereon. Use of such a chart lies within the sound discretion of the trial judge. *Commonwealth v. Ayala*, 277 Pa.Superior 363, 419 A.2d 1187 (1980). A wide discretion is vested in the trial judge in permitting demonstrations or experiments to be made in the presence of the jury. *Henry, PA. Evidence, Vl. 1, § 424.* Given the complexity of the series of crimes being presented by the prosecutor and the need for clarity in presenting it to jury we can find no abuse of discretion by the trial judge. Appellant's claims is without merit.

## IX. INSTRUCTIONS TO THE JURY CONCERNING THE TESTIMONY OF SANDRA CORNISH.

Appellant contends that the court erred in its charge to the jury on the caution with which they were to regard the testimony of Sandra Cornish, an alleged accomplice in the crimes. Appellant claims that the court erred in not using the words "corrupt" and "tainted" in describing Sandra Cornish's testimony. The court below cites *Commonwealth v. Vorhauer*, 232 Pa.Superior Ct. 84, 331 A.2d 815 (1974), (there was no abuse of the court's discretion by not employing the words "corrupt of polluted" or in not telling the jury why an accomplice charge was suspect), as directly applicable in this case. We agree with the determination and find appellant's claim without merit.

Judgment of sentence affirmed.

CERCONE, J., concurs in the result.