**Commonwealth v. Clyburn**

*Anthony Gil, Assistance District Attorney,* for Commonwealth at Trial.

*Robert Martin Falin, Deputy District Attorney,* for defendant on appeal.

*Anne C. Clyburn,* pro se at trial.

*Samuel C. Stretton,* for defendant on appeal.

CARPENTER, *J.,* December 3, 2010—

## FACTUAL AND PROCEDURAL HISTORY

Appellant, Anne L. Clyburn, appeals from the judgment of sentence imposed on September 9, 2009, following her conviction of theft by unlawful taking or disposition (over $2,000)[1], theft by unlawful taking or disposition ($200 - $2,000)[2], theft by deception, false impression (over $2,000)[3], theft by deception, false impression ($200 - $2,000)[4], receiving stolen property (over $2,000)[5], receiving stolen property ($200 - $2,000)[6], tampering with records or identification[7] and unlawful use of a computer[8].

Appellant's convictions arose from her former position as Chief Executive Officer at the United Food and Commercial Workers Local 1776 Federal Credit Union. During her approximately six and one-half years as CEO, appellant awarded herself raises which were never approved by the credit union's board of directors, she manipulated the line of credit on her credit union issued debit card and wrote checks from the credit union's operating account for her personal expenses. Appellant stole more than $32,400.00 from the credit union's members, a credit union which serves people

---

1. 18 Pa.C.S.A. §3921(a);
2. *Id.;*
3  *Id.* at §3922(a)(1);
4. *Id.;*
5. *Id.* at §3925(a);
6. *Id.;*
7. *Id.* at §4104(a);
8. *Id.* at §7611 (a)(1).

of very modest means.

On July 7, 2010, appellant was brought before this court for a three-day jury trial, stating that she wished to represent herself. (Trial 7/7/10 p.4) Thereafter, this court conducted a colloquy in order to assure the validity of appellant's waiver of counsel. Satisfied that appellant knowingly, intelligently and voluntarily waived her right to counsel, this court proceeded to conduct the trial with appellant promoting a pro se defense.

At trial, the Commonwealth called Joseph Bressi, the current CEO of the credit union and appellant's successor, to testify. The Commonwealth also presented Mary Dunne, the treasurer of the credit union, Sergeant Rocco Wack and a forensic accountant, Steven A. Witten, to testify. After the Commonwealth rested, appellant presented the testimony of Professor Stephan Clyburn, appellant's husband. The Commonwealth then presented a rebuttal witness, Nans Lassen, a union-side labor attorney.

At the conclusion of the trial, appellant was found guilty of the aforementioned charges. On September 9, 2010, appellant, who was then represented by counsel, was sentenced. Subsequently, with the assistance of counsel, appellant filed post-sentence motions. These were denied on September 13, 2010. This timely counseled appeal followed.

## ISSUES

I.   Whether appellant knowingly, voluntarily and intelligently waived her right to counsel at trial.

II.   Whether the verdict was against the weight of the evidence, and whether the evidence was sufficient to convict

appellant.

III. Whether this court properly warned appellant to ask proper questions at trial.

IV. Whether appellant had the opportunity to voir dire the expert witness, Steve Whitten.

V. Whether Steve Whitten's expert opinion was proper.

VI. Whether this court was responsible for directing the court reporter to transcribe the notes of testimony of the opening statements and closing arguments.

VII. Whether this court properly allowed the jury to take back, during deliberations, the forensic accounting reports.

VIII. Whether the testimony of Nans Lassen was proper.

IX. Whether this court was required to colloquy appellant on her decision not to testify at trial.

X. Whether the accountant's report was properly introduced during the testimony of Joseph Bressi.

XI. Whether appellant had the opportunity to question Joseph Bressi on re-cross examination.

XII. Whether Mary Dunne properly referenced the forensic report.

XIII. Whether testimony regarding a severance package was proper.

## DISCUSSION

### I. *Appellant Knowingly, Voluntarily and Intelligently Waived Her Right to Counsel at Trial.*

First, appellant argues that she did not have a knowing,

voluntary and intelligent waiver of her right to counsel. This court disagrees.

A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. El*, 602 Pa. 126, 134, 977 A.2d 1158, 1162 (2009). The right to appear pro se is guaranteed as long as the defendant understands the nature of his choice. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. In Pennsylvania, Rule of Criminal Procedure 121 sets out a framework for inquiry into a defendant's request for self-representation. Pa.R.Crim.P. 121. Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court must allow the individual to proceed pro se. *See, El, supra*; *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1335 (1995) (holding that a defendant must demonstrate a knowing waiver).

To ensure that a waiver of counsel is knowing, voluntary and intelligent, a defendant must be colloquied on her understanding of at least the following six elements: (1) whether she understands her right to free counsel, (2) whether she understands the nature of the charges against her and their elements, (3) whether she is aware of the possible sentences, (4) whether she understands that if she waives her right to counsel, she will still be bound by the rules of procedure and that counsel would be familiar with these rules, (5) whether she understands that there are possible defenses of which counsel might be aware and which may be lost permanently and (6) whether she understands that she has other rights that may be lost permanently if not timely asserted, including objections to errors. Pa.R.Crim.P 121(A)(2); *Commonwealth*

*v. Houtz,* 856 A.2d 119 (Pa.Super. 2004).

In this case, appellant affirmatively stated that she wished to represent herself. (Trial 7/7/ 10 p. 4). This was not the first time that appellant expressed to the court that she wished to do so. *Id.* at 13. It is a conversation that appellant had with this court on more than one occasion in the courtroom. *Id.* at 13-14. Appellant had previously expressed that she had some difficulty with attorneys in the past and finally got to the point where she intended to represent herself. *Id.* at 13. The decision to waive the right to counsel was not a decision appellant made on the day of trial. *Id.*

Appellant reviewed, understood and signed the waiver of counsel form. *Id.* at 4-5, 13.[9] The Commonwealth comprehensively reviewed with appellant the possible range of sentences she could be facing if she were to be found guilty

___

9. The Waiver of Counsel form reads as follows:
   (1) I understand that I have the right to be represented by counsel (a lawyer), and the right to have free counsel appointed if I am indigent (unable to afford counsel).
   (2) I understand the nature of the charges against me and the elements of each of those charges.
   (3) I am aware of the permissible range of sentences and/or fines for the offenses charges.
   (4) I understand that if I waive the right to counsel I will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.
   (5) I understand that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.
   (6) I understand that, in addition to defenses, I have many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by me, these errors may be lost permanently.
   (7) I read write and understand the English language.
   (8) No one has tricked, threatened or forced me into waiving my right to counsel. I am doing this of my own free will.
   (9) I do not want to have counsel advise me or speak for me. I understand that by signing this paper I am waiving my right to counsel and will be representing myself.

of the various charges. *Id.* at 5-9. Appellant was also made aware that those sentences could be imposed consecutively. *Id.* at 8-9. This court explained that the rules of criminal procedure, The Pennsylvania Rules of Evidence and the rules of criminal law would be applied in this case, and appellant would be bound by such rules. *Id.* at 9. Appellant affirmed that she understood. *Id.* It was made clear that appellant would be expected to ask proper questions or they would not be allowed. *Id.* Appellant was aware that proper courtroom decorum was expected. *Id.* at 9-10. Additionally, the process of jury selection was thoroughly described. *Id.* at 9-12. Moreover, this court explained an overview of how the trial would proceed. *Id.* at 13. After this extensive colloquy, this court was satisfied that appellant's decision to proceed without the benefit of counsel was a deliberate decision and her waiver of counsel was voluntarily tendered.

Appellant also argues that stand-by counsel should have been appointed and available to her during trial; however, under Pa.R.Crim.P.121 the power to do so is discretionary and not mandatory. She had discharged counsel previously retained. After her trial she retained new counsel. Had she desired standby counsel, she clearly had the means to retain standby counsel but chose not to.

## II. *The verdict Was Not Against the Weight of the Evidence, and the Evidence Was Sufficient to Convict Appellant.*

Next, appellant contends that the verdict was against the weight of the evidence and the evidence was insufficient to support the verdict. Appellant argues that the evidence essentially consisted of alleged pay raises that were not approved by the board of directors and three or four checks

written for dental treatment for her husband.

Appellant states that the record referenced the board of directors raising questions about whether or not she was entitled to additional monies since she was a union member at all pertinent times and somehow was entitled to such raises. Further, appellant claims that the record also demonstrated there was an issue on the dental matters as to a test account. Appellant argues that the minutes of the board of directors were presented, but that no one from the board of directors with authority was presented to indicate that there was no approval for such raises. Appellant also argues that Mary Dunne, the member of the board of directors who testified, was uncertain and confused about her being a union member, did not remember many things. Ms. Dunne testified she was aware that both the Federal government and the supervisory board has repeatedly audited the accounts and found nothing wrong. Finally, appellant argues that Ms. Dunne confirmed that she did a good job during her years of being a CEO from 2000 through 2007.

At trial the following facts were established. Joseph Bressi, the current CEO of the credit union and appellant's successor, uncovered accounting irregularities which occurred during appellant's tenure. (Trial 7/7/10 p. 49-52). After uncovering these irregularities and reporting it to the board of directors, the board of directors hired an independent forensic auditor, Steven A. Witten, to perform a forensic investigation. (Trial, V. 2, 7/8/10 p. 35). Mr. Witten's investigation revealed that appellant during her tenure as CEO of the credit union provided herself with $32,469 in unauthorized pay raises and bonuses, wrote three checks totaling approximately $1000 to Alan Kirsh, who was not on the list of the credit union's approved vendors and accessed her debit card account to

increase the availability of funds. *Id.* at 37, 44 - 45, 52 - 80.

Mary Dunne, a union representative of the credit union and a member of the board of directors, also testified on behalf of the Commonwealth. In part, Ms. Dunne verified that appellant did not have the authority to give herself pay raises and bonuses not approved of by the board of directors. (Trial 7/7/10 p. 113). Additionally, Ms. Dunne confirmed that appellant did not have permission to write checks to Alan Kirsh, appellant's husband's dentist. *Id.* at 112. On cross-examination, appellant vigorously questioned Ms. Dunne. In the course of her cross-examination, appellant asked Ms. Dunne about the union and its collective bargaining agreement. Through this line of questioning, appellant advocated the defense that she was only giving herself raises and bonuses as provided for in the collective bargaining agreement that she was entitled to as a union member. *Id.* at 123-133, 158-160. On re-direct, Ms. Dunne explained that appellant was exempt from union status since she held a management position with the credit union. *Id.* at 161.

In support of appellant's union member defense, she presented the testimony of her husband, Professor Stephan Clyburn. Mr. Clyburn testified that appellant had been a union member since February 2, 2002 as indicated on her union membership card. (Trial, V. 3 7/9/10 pp. 11). He also stated that appellant had been paying union dues from early 2002 until the time of her termination as CEO. *Id.* at 13.

The Commonwealth presented a rebuttal witness, Nans Lassen. Ms. Lassen is a union-side attorney who represent's the credit union. *Id.* at 34, 35. In significant part, Ms. Lassen testified that the recognition clause in the 2002 and 2004 collective bargaining agreements contains language

that specifically excludes from coverage the president and CEO of the credit union, supervisors and other managerial employees. *Id.* at 42 - 43, 45. In other words, these individuals are not entitled to the benefits of the collective bargaining agreement. Ms. Lassen explained that such individuals are excluded from union coverage because they negotiate the collective bargaining agreement on behalf of the credit union and they don't share the same community of interests as non-managerial employees under the agreement. *Id.* at 43. In addition to discussing the recognition clause, Ms. Lassen also explained the difference between being a member of a union as opposed to being entitled to the benefits of a collective bargaining agreement. *Id.* at 46. Ms. Lassen clarified that although appellant might have been a member and paid dues to the union, she was not entitled to the benefits under the collective bargaining agreement as set forth in the recognition clause in the agreement, a contract that appellant helped to negotiate and signed on behalf of the credit union. *Id.* at 49.

Although appellant styles her issue as both a sufficiency of the evidence and weight of the evidence claim, it seems that based on the argument in support thereof appellant is really asserting a weight claim only as she is asking our appellate court to ignore the evidence presented by the Commonwealth and only focus on her defense as asserted through her cross-examination of the Commonwealth witnesses and the testimony of Mr. Clyburn. Appellant's argument identifies and concentrates only on the evidence that was inconsistent with the evidence presented by the Commonwealth. In effect, appellant's current argument is a reiteration of the defense she advocated, but which was ultimately rejected by the jury.

### III. *This Court Properly Warned Appellant to Ask Proper Questions at Trial.*

Third, appellant contends that this court erred in repeatedly threatening her with contempt when she would not properly frame her questions or sometimes referenced other matters. Appellant argues that if this court felt that she was incapable of representing herself, then this court erred in allowing her to waive her right to counsel. Appellant claims that this court's repeated threats of contempt chilled her right of advocacy and her ability to effectively represent herself.

During cross-examination at trial, appellant repeatedly made statements in the form of testimony that were not questions. At sidebar, this court warned appellant that such conduct was improper, and cautioned her to not continue making those kinds of statements. Appellant was warned that if she did not cease this behavior a contempt hearing would be held. (Trial 7/7/10 p. 79 - 80). Appellant acknowledged that she understood this warning. *Id.* at 80. This court warned appellant again. *Id.* at 83. Appellant continued to make improper remarks rather than ask proper questions. *Id.* at 86. At that point, this court addressed the jury and instructed them to disregard the highly improper side remarks that appellant insisted on making, which were not in the form of questions. It was made clear to appellant that stronger action would be taken if it continued to happen. *Id.* at 86 - 87. The warning needed to be repeated once again while the jury was not in the courtroom. *Id.* at 118. At that time this court noted that appellant had been disregarding and willfully abusing the court's order by not complying. Appellant was told that if she continued to make the improper comments in front of the jury that are testimonial in nature and speaking in terms of things that she believed occurred or did not occur, this

court would conduct contempt proceedings. *Id.* Finally, prior to the arrival of the jury on the second day of trial, this court gave appellant a court order, specifically warning her against any further disruptive conduct, which would not be tolerated by this court. (Trial, V. 2 7/8/10 p.3).

During appellant's colloquy to determine whether her waiver of counsel was knowing and intelligent, this court informed appellant that she would be bound by the Rules of Criminal Procedure, the Pennsylvania Rules of Evidence and the rules of criminal law. (Trial 7/7/10 p. 9). Appellant acknowledged that she understood. *Id.* In addition, this court specifically stated that she would have to ask proper questions or they wouldn't be allowed. *Id.* Given these directives, appellant stated that it was still her decision to proceed pro se with a jury trial. *Id.* at 10. Therefore, appellant knew before the trial began that she would be held to the same standard as an attorney regarding proper questioning of witnesses, and she decided to go forward with the jury trial unrepresented. A criminal defendant who knowingly and intelligently waives her right to counsel so that she may represent herself at trial may not later rely upon her own lack of legal expertise as aground for a new trial. *Commonwealth v. Bryant*, 579 Pa. 119, 136, 855 A.2d 726, 736 (Pa. 2004). That is exactly what appellant is doing here.

Additionally, appellant's behavior was improper, and this court properly warned appellant of the consequences. Appellant's claim that her right of advocacy was chilled is disingenuous as evidenced by the fact that this court was required to issue repeated warnings of contempt for the same improper behavior. In fact, these warnings had little impact on appellant's advocacy.

### IV. *Appellant Had the Opportunity to Voir Dire the Expert Witness, Steve Whitten.*

Appellant next contends that this court erred in not allowing her the opportunity to voir dire Mr. Whitten, the expert witness. In particular, appellant claims that after the Commonwealth questioned him on his qualifications, this court never gave her an opportunity to do so. Appellant argues that his testimony was critical and the failure to allow a challenge to his credentials was reversible error.

After the Commonwealth conducted its voir dire, this court accepted Mr. Whitten as an expert in forensic accounting. Appellant did not object to his qualifications, object to this court's finding that Mr. Whitten as an expert or make it known that she wished to voir dire Mr. Whitten. Therefore, this issue is waived as it may not be raised for the first time on appeal. Pa.R.A.P. 302(a).

### V. *Whether Steve Whitten's Expert Opinion was Proper.*

In her fifth issue on appeal, appellant claims that this court erred in allowing Mr. Whitten to give expert opinions on the ultimate issue as to fraud. Appellant states that Mr. Whitten was presented as an expert witness on forensic accounting as to what was done and not done. Appellant argues that because Mr. Whitten was allowed to go far beyond that to indicate her guilt or innocence a new trial is warranted. Appellant asserts that this court improperly allowed this witness to opine on the ultimate issue.

There was no objection at the time of trial as to Mr. Whitten's testimony in any respect; therefore, this issue is waived because as a general rule, in order to preserve an issue for appeal, a defendant must make a timely objection

at trial. *Commonwealth v. Fox*, 619 A.2d 327, 331 (Pa.Super. 1993).

Here, there was no objection. Additionally, Pennsylvania does allow expert opinion on the ultimate issue under Pennsylvania Rule of Evidence 704.

Therefore, it was up to appellant to object if she believed that it was somehow improper.

### VI. *This Court Was Responsible for Directing the Court Reporter to Transcribe the Notes of Testimony of the Opening Statements and Closing Arguments.*

Sixth, appellant claims that this court erred in not having the notes of testimony of the opening and closing statements transcribed and having these taken down by the court reporter. Appellant argues that as a result there is no record of what was said and no opportunity to examine whether inappropriate statements were made by the district attorney during the opening or closing statements.

In this case, the opening and closing statements were recorded by the court reporter; however there has been no request that they be transcribed. Appellate counsel puts the onus on the court for this failure. However, the burden is on defense counsel to request that arguments to the jury be transcribed. *Commonwealth v. Banks*, 454 Pa. 401, 409, 311 A.2d 576, 580 (Pa. 1973).

It is not the responsibility of the trial court to order the transcription of the closing arguments. To the contrary, Pa.R.A.P. 1911 makes it clear that it is the responsibility of the appellant to order all transcripts necessary to the disposition of his appeal. *Commonwealth v. Steward*, 775 A.2d 819, 833 (Pa. Super. 2001). In this case, the record reveals that

appellant did not specifically order that a transcript of the closing arguments be made. As a result the court reporter did not automatically transcribe those arguments, since under our rules of judicial administration the court reporter was under no obligation to do so. See, Pa.R.J.A. 5000.2(g) ("[O] pening or closing statements of counsel...shall be recorded, but not transcribed, unless otherwise ordered.).

VII. *This Court Properly Allowed the Jury to Take Back, During Deliberations, the Forensic Accounting Reports.*

Next, appellant contends that this court erred in allowing the jury to take back, during deliberations, the forensic accounting reports (Exhibits C-24 and C-25). Appellant argues that this evidence had been testified to and, by allowing only Commonwealth evidence in the deliberating room, this court in effect allowed the jury to have detailed reports of Commonwealth evidence during the deliberation process, to the exclusion of the defense evidence. Appellant concludes that this was reversible error since it placed under emphasis of the Commonwealth's key evidence without emphasizing the cross-examination.

Pennsylvania Rule of Criminal Procedure 646 provides that the jury may take with it such exhibits as the trial judge deems proper. Accordingly, whether an exhibit should be allowed to go out with the jury during deliberation is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion. *Commonwealth v. Hawkins*, 701 A.2d 492 (Pa.Super. 1997).

In this case, during deliberations the jury requested in pertinent part Exhibits C-24 and C-25, which they identified as the payroll ledgers. There seemed to be some confusion what Exhibit C-24 consisted of whether the exhibits were the

actual payroll ledgers or the payroll ledgers attached to the forensic accounting investigation report. (Trial, V. 3, 7/9/10 p. 79 - 80). Regardless of this confusion, appellant agreed that they should be sent back with the jury. *Id.* at 80.

This court finds this issue waived on appeal because as a general rule, in order to preserve an issue for appeal, a defendant must make a timely objection at trial. *Commonwealth v. Fox*, 619 A.2d 327, 331 (Pa. Super. 1993). Here, not only was there no objection, appellant in fact agreed that Exhibit C-24 and C-25 should be sent back with the jury during deliberations.

## VIII. *The Testimony of Nans Lassen Was Proper.*

Appellant also raises on appeal that this court erred in allowing the testimony of Ms. Lassen, the lawyer for the credit union in the gender discrimination case, to indicate that there had been no probable cause finding. Appellant argues that this testimony was irrelevant and a collateral issue. However, there was no objection at trial of Ms. Lassen's testimony; therefore, this issue is waived. Pa.R.A.P. 302(a).

By way of further explanation, appellant in part advocated the defense by way of her witness, Mr. Clyburn, namely, that the credit union asserted the charges of theft against her in retaliation for her initiation of a charge of discrimination she lodged with the Pennsylvania Human Relations Commission ("PHRC") against the credit union. Therefore, the Commonwealth called Ms. Lassen as a rebuttal witness. Ms. Lassen read into evidence the letter written by the PHRC to appellant after its investigation into her charges of discrimination. In pertinent part, the letter stated that after its investigation of her unlawful discrimination complaint, it determined that the complaint should be dismissed because

the facts of the case do not establish that probable cause exists to credit the allegations of unlawful discrimination. (Trial, V. 3, 7/9/10 p.38). When Ms. Lassen's testimony is read in the context of the entire transcript, it is clear that the purpose of Ms. Lassen's testimony was in direct response to the defense theory and an attempt to discredit it.

### IX. *This Court Was Not Required to Colloquy Appellant on Her Decision Not to Testify at Trial.*

Appellant states that there was no valid colloquy concerning her right to testify, and this court erred in not conducting a colloquy. She argues that she was not properly informed of her absolute right to testify. Appellant asserts that she should have testified during her trial and was not properly notified of her right to do so and apparently was also chilled by the repeated threats of a contempt finding if she said anything wrong.

In choosing to represent herself at trial, appellant understood that she may have rights that, if not timely asserted, may be lost permanently. See, Waiver of Counsel Colloquy Form. Appellant's right to testify on her own behalf is one of those rights. It was not the role of this court to act as defense counsel and inform appellant of that right. Accordingly, it must be presumed that appellant knew she had the right to testify on her own behalf. Furthermore, her trial tactic of not exposing herself to cross examination was a sound trial decision.

The record shows that appellant did not assert this right, nor did she object to the lack of an on-the-record colloquy. As she did not object to the lack of a colloquy at trial, this issue is waived because issues not raised to the trial court cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Even

if this issue is not waived, it is meritless because there is no requirement that a court conduct an on-the-record colloquy when a defendant waives her right to testify. *Commonwealth v. Duffy*, 832 A.2d 1132, 1137 n. 3 (Pa. Super. 2003).

Additionally, there is no support in the record for appellant's claim that the contempt warnings had any chilling effect on her advocacy. This claim is disingenuous. Rather, these warnings had very little impact on appellant because throughout trial appellant ignored these warnings and continued to ask improper questions in the form of testimony.

### X. *The Accountant's Report Was Properly Introduced During the Testimony of Joseph Bressi.*

For the first time on appeal, appellant objects to the introduction of Mr. Whitten's forensic investigation report during the testimony of Mr. Bressi, arguing that it was not a business record and should not have been allowed to be used to buttress Mr. Bressi's testimony.

"In order to preserve an issue for review, a party must make a timely and specific objection at trial." *Commonwealth v. Montalvo*, 641 A.2d 1176,1185 (Pa. Super. 1994). The failure to object to an offer of evidence at time the offer is made, assigning grounds for objection, is a waiver upon appeal of any ground of complaint against its admission. *Commonwealth v. Bullock*, 518 A.2d 824, 826 (Pa. Super. 1986). As such, appellant has waived her right to argue this issue on appeal.

### XI. *Appellant Had the Opportunity to Question Joseph Bressi on Cross-Examination.*

In appellant's eleventh issue on appeal she contends that

this court erred in not allowing her to question Mr. Bressi on re-cross examination. Appellant argues that there was no opportunity given to her for re-cross.

After the Commonwealth questioned Mr. Bressi on re-direct examination, this court excused the witness. Appellant did not object. Therefore, this issue is waived on appeal. Pa.R.A.P. 302(a).

## XII. *Mary Dunne Properly Referenced the Forensic Report.*

Appellant claims that this court erred in allowing the witness, Mary Dunne to reference the forensic report, which was not properly introduced. Again this issue is waived based on appellant's failure to object at trial. Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Schoff*, 911 A.2d 147, 157 (Pa. Super. 2006) (holding party must make timely and specific objection at trial to preserve issue for appellate review).

## XIII. *Testimony Regarding a Severance Package was Proper.*

In appellant's final issue, she contends that this court erred in allowing Ms. Dunne's testimony as to a severance package offered to her by the credit union. Specifically, appellant objects to the testimony in which Ms. Dunne testified that the severance package was withdrawn, arguing that it tainted the jury. However, no objection was made to this testimony at trial; therefore, this issue is waived. See, Pa.R.A.P. 302(a). Additionally, such testimony was proper because it was in response to comments made by appellant earlier in the trial. (Trial, V. 1, 7/7/10 p. 120).

## CONCLUSION

The arrogance that caused appellant to conclude that she could steal also caused her to conclude that she could represent herself better than any attorney. Based on the forgoing analysis, the September 9, 2010 judgment of sentence should be affirmed.