J-S17010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| QUADIR JEFFRIES, | |
| Appellant | No. 880 EDA 2016 |

Appeal from the Judgment of Sentence of February 17, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005829-2014

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| QUADIR JEFFRIES, | |
| Appellant | No. 1111 EDA 2016 |

Appeal from the Judgment of Sentence of February 17, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005830-2014

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 12, 2017**

Appellant, Quadir Jeffries, appeals from the judgment of sentence entered on February 17, 2016.  We affirm.

Within the trial court's thorough and well-written opinion to this Court, the trial court summarized the underlying facts of the case. According to the trial court:

> In early January[] 2014, [R.M.] was working as a pizza delivery driver. At some point in early January 2014, [R.M.] was driving his vehicle when he noticed a woman, later identified as Kimberly Cook, walking down the street near 54th Street and Lansdown Avenue in Philadelphia. [R.M.] honked his horn at Cook and pulled over his vehicle to talk with her, hoping to exchange phone numbers and meet with her later. At this time, Cook identified herself as "Zah."[fn.1] While [R.M.] and Cook were talking and exchanging phone numbers, Cook noticed that [R.M.] had an amount of U.S. currency on the passenger side floor of his vehicle.
>
> > [fn.1] Cook was also identified as "Zamirah Johnson."
>
> After meeting [R.M.], Cook told her boyfriend, co-defendant Hakim Blatch, about the meeting and asked Blatch to rob [R.M.]. Blatch agreed and arranged to have co-defendants [Appellant] and Alonzo Wallace aid in the robbery. The plan was for Cook to accompany [R.M.] to his house, while Blatch, Wallace, and [Appellant] followed in a separate car. Cook would then open the door for Blatch, Wallace, and [Appellant] to enter and rob [R.M.].
>
> On January 18, 2014, Cook called [R.M.] under the false pretense of meeting [R.M.] to have sex. Cook arranged to have [R.M.] pick her up near 56th Street and Lansdown Avenue later that evening. Cook, Blatch, Wallace, and [Appellant] then headed to 56th Street and Lansdown Avenue in [Appellant's] car. Also with them was Cook's friend, Crystal Collins. Cook wished to have Collins present with her, as Cook did not know [R.M.] and was nervous about meeting him alone. Blatch, [Appellant], and Wallace waited in [Appellant's] car around the corner from where [R.M.] was waiting while Cook and Collins exited the vehicle and met with [R.M.].

[R.M.] arrived at the corner of 56th Street and Lansdown Ave[nue] and waited for approximately 45 minutes before Cook arrived, accompanied by Collins. [R.M.] had both women get into his car and drove to his apartment on the 4200 block of North 7th Street in Philadelphia. While [R.M.] was driving, Cook was texting Blatch, providing directions as to where [R.M.] was driving and the address at which they stopped.

Upon arriving at [R.M.'s] apartment, [R.M.], Cook, and Collins went inside and had a conversation about sex. While they were talking, Blatch, [Appellant], and Wallace arrived at [R.M.'s] apartment, finding the outside door locked, and Blatch texted Cook to tell her to open the door. At this time, Cook asked if she could go outside to smoke a cigarette, and [R.M.] gave her the keys to his car, telling her that he had a lighter inside of it. Cook then went downstairs and opened the door for [Appellant] and Wallace to enter the building and directed them to [R.M.'s] bedroom. [Appellant] and Wallace entered the building and went upstairs while Cook went to the street corner, throwing away [R.M.'s] keys, where she was later joined by Collins. As Collins left the building, Blatch entered.

After letting Cook out of the apartment and watching her go down the steps, [R.M.] closed his door, only to reopen it and see men rushing up the steps. [R.M.] attempted to close his door, but [Appellant] and Wallace kicked the door in, forcing [R.M.] to the ground. While [R.M.] was on the ground, [Appellant] and Wallace pistol whipped him with handguns while demanding that [R.M.] tell them where the money was, and threatening to shoot him. Blatch joined [Appellant] and Wallace while they were beating [R.M.]. The assailants rummaged through [R.M.'s] room looking for cash, and found a cookie tin with marijuana and cash. They failed to find the large sum of cash that was in [R.M.'s] pocket.

[M.S.], who lived in the apartment across from [R.M.], heard the commotion and opened his door to see what was happening. [M.S.] saw two men standing in [R.M.'s] broken doorway. Wallace, noticing [M.S.] open the door, turned towards [M.S.] and shot at him. Closing the door as Wallace turned, [M.S.] ducked and was shot through the

- 3 -

door, with the bullet striking his left arm. Had [M.S.] not ducked, the bullet would have struck [M.S.] in his heart. As the three robbers left the apartment building, [Appellant] fired a shot at a security camera inside the front door.

Hearing the assailants leave, [R.M.] checked on [M.S.] while [M.S.] called the police. Police responded and were let into the house by [R.M.]. [M.S.] and [R.M.] were transported to Temple University Hospital for medical treatment.

Police recovered one [nine-millimeter] fired cartridge case and one [40 caliber] fired cartridge case from the first floor hallway of the home. Police also recovered the video tapes of the home surveillance system that covered the front entryway into the building. The inside camera appeared to be damaged by a gunshot. After his release from the hospital, [M.S.] found the [40 caliber] bullet that had struck him in his room and gave that bullet to the landlord, who turned it over to police.

Later [on the night of the shooting], Blatch, Cook, Collins, Wallace, and [Appellant] all met at a speakeasy on Jackson and Taney Streets. While the group was together, they discussed Wallace shooting [M.S.] and [Appellant] shooting out the camera. At this time, Blatch stated that Wallace and [Appellant] had already pistol-whipped [R.M.] by the time Blatch got upstairs. [Appellant] gave Collins some money at the speakeasy while Blatch gave Cook some marijuana.

Police provided the media with a copy of the surveillance video, in an effort to get public help in identifying the robbers. Deputy Sheriff Martin Samuels, who knew both Blatch and [Appellant] from his time patrolling the area, watched the video of the assault and identified Blatch and [Appellant] as two of the perpetrators. Police also conducted an analysis of the phone [R.M.] had used to contact Cook, and from that, were able to identify Cook as a suspect in the case. Police put Cook's photo in a photo array and showed it to [R.M.], who identified Cook as the person he stopped on the street and who set him up for the robbery.

[Appellant] was arrested on February 23, 2014. Police made several efforts to locate Blatch and Cook in February and March 2014, but were unable to locate them. Blatch and Cook were arrested on June 4, 2014. Wallace was arrested on June 11, 2014. After her arrest, Cook provided a statement to police, detailing her involvement in the robbery. Cook also identified Blatch, Wallace, and [Appellant] to police. A cell phone tower analysis of the location of Blatch's cell phone on the night of the robbery corroborated Cook's statement to the police regarding the events surrounding the robbery.

Trial Court Opinion, 5/27/16, at 2-7 (internal citations and some internal footnotes omitted).

At docket number CP-51-CR-0005830-2014 (hereinafter "docket number 5830"), the Commonwealth charged Appellant with a number of crimes, including aggravated assault against R.M., robbery, and burglary.[1] At docket number CP-51-CR-0005829-2014 (hereinafter "docket number 5829"), the Commonwealth charged Appellant with crimes including attempted murder against M.S., aggravated assault against M.S., criminal conspiracy, and firearms not to be carried without a license.[2] Following trial, the jury found Appellant guilty of aggravated assault, robbery, and burglary at docket number 5830 and aggravated assault, criminal conspiracy, and firearms not to be carried without a license at docket number 5829. The jury found Appellant not guilty of attempted murder at the latter docket

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 3701(a)(1)(ii), and 3502(a)(1), respectively.

[2] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 903, and 6106(a)(1), respectively.

number. On February 17, 2016, the trial court sentenced Appellant to serve an aggregate term of 20 to 40 years in prison for the above convictions.

Appellant filed a timely notice of appeal at both docket numbers and the trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Within Appellant's Rule 1925(b) statement, Appellant listed the following, relevant claims:

> 1. The evidence was insufficient to support the verdict. Thus a judgment of acquittal should be granted.
>
> . . .
>
> 4. The trial court erred in permitting Commonwealth eyewitness [R.M.] to testify; in that, prior to trial there was no discovery passed to the defense indicating that [R.M.] would be an identification witness who could identify [Appellant] as the perpetrator. Further, prosecutorial misconduct occurred in that the assistant district attorney prior to trial repeatedly indicated that he was not calling [R.M.] as an identification witness. Thus a new trial is warranted.

Appellant's Rule 1925(b) Statement, 5/9/16, at 1-2 (some internal capitalization omitted).

Appellant raises two claims on appeal:

> 1. Whether the [trial] court should have granted a mistrial when Appellant's due process rights were violated by an in court identification of Appellant when the Commonwealth was aware that this witness could make an identification and did not disclose this information in discovery?
>
> 2. Whether the evidence presented was insufficient to support the verdict of guilt beyond a reasonable doubt?

Appellant's Brief at 5.

First, Appellant claims that the trial court erred when it denied his request for a mistrial after the victim, R.M., made an in-court identification of Appellant as one of his assailants. This claim fails.

This Court has summarized our standard of review with respect to this claim:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion by one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.
>
> An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Hudson*, 955 A.2d 1031, 1034 (Pa. Super. 2008) (internal citations and quotations omitted).

The trial court fully explained why Appellant's claim on appeal fails:

> [Appellant claims that the trial court] "erred in permitting . . . [the victim, R.M.,] to testify[] in that, prior to trial[,] there was no discovery passed to the defense indicating that [R.M.] would be an identification witness who could identify [Appellant] as the perpetrator. Further, prosecutorial misconduct occurred in that the assistant district attorney prior to trial repeatedly indicated that he was not calling [R.M.] as an identification witness." This claim is without merit.

First, [Appellant] never argued in the trial court that [R.M.] should not have been permitted to testify due to a discovery violation. [Appellant] moved for a mistrial on the ground that [R.M.] made an in-court identification of [Appellant] while the discovery led counsel to believe that [R.M.] was unable to identify any of the assailants. Counsel also objected to the in-court identification. At no time did [Appellant] seek to strike [R.M.'s] testimony or bar [R.M.] from testifying.

Assuming *arguendo* that [Appellant] intended to challenge the [trial court's] denial of his mistrial motion, his claim is without merit. Pennsylvania courts have "consistently held that where it has been determined that the confrontation between the accused and the [accuser] is uncontrived, any spontaneous identification is proper." ***Commonwealth v. Cullen***, 489 A.2d 929, 938 (Pa. Super. 1985). At trial, the following exchange took place between the Commonwealth and [R.M.] during [R.M.'s] direct examination:

Commonwealth: Did you get a look at any of [the assailants] as they were coming up your steps?

[R.M.]: The one that was in the front.

Commonwealth: The one in the front, can you describe the one in the front?

[R.M.]: Yeah. He wearing glasses in back of you.

Commonwealth: I'm sorry?

[R.M.]: He wearing glasses.

Commonwealth: The defendant that's wearing the glasses?

[R.M.]: Yes.

Commonwealth: Indicating the defendant, [Appellant].

Commonwealth: [R.M.], I asked you for a description, what makes you say that it was [Appellant]?

[R.M.]: Because he's the only face I saw.

[N.T. Trial, 12/3/15,] at 222-223.  This was the first time [R.M.] had made an identification in this matter.  Previously, [R.M.] had said he did not have his glasses on at the time, could hardly see the criminals, and could only say that the lead assailant had a "small young face."  For that reason, he had not been shown a photo array and had not been asked to attend a lineup.  The identification in court was both spontaneous and unexpected, as the [trial] court explicitly found when denying the mistrial motion.  Moreover, since there was no prior reason to believe that [R.M.] would make an identification, [Appellant's] claim that the prosecutor committed misconduct by not disclosing that an identification would be made is frivolous.

During the argument on the mistrial motion, [Appellant's] trial attorney acknowledged that he did not have any evidence that the Commonwealth intentionally orchestrated the surprise in-court identification.  Nor was there any reason to believe that any discoverable material of any kind was withheld from the defense.  In addition, [Appellant] was given ample opportunity to cross-examine [R.M.] concerning lack of pre-trial identification, and all of the statements that he had made pretrial.

Accordingly, the record demonstrates that there was no prosecutorial misconduct, no discovery violations, and no basis for the grant of a mistrial.  No relief is due.

Trial Court Opinion, 5/27/16, at 9-11 (internal bolding and some internal citations, corrections, and capitalization omitted).

We agree with the trial court's able analysis and conclude that the trial court did not abuse its discretion when it denied Appellant's request for a mistrial.

Next, Appellant claims that the evidence was insufficient to support his convictions.  This claim is waived, as Appellant's Rule 1925(b) statement did

not sufficiently identify the error that Appellant intended to challenge on appeal.

As this Court has consistently held:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the [Rule] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a Rule] 1925(b) statement [] does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008), *quoting **Commonwealth v. Flores**, 921 A.2d 517, 522-523 (Pa. Super. 2007).

In this case, Appellant's Rule 1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his convictions. ***See*** Appellant's Rule 1925(b) Statement, 5/9/16, at 1-2. The statement thus failed to specify which of Appellant's multiple convictions he was challenging and failed to "specify the element or elements upon which the evidence was insufficient" to support the unidentified conviction. We must conclude that Appellant's sufficiency of the evidence claim is waived on appeal. ***Williams***, 959 A.2d at 1257.

Further, it is of no moment that the Commonwealth failed to object to the defect in Appellant's Rule 1925(b) statement.[3] As we have held:

---

[3] We note that the trial court could not ascertain the sufficiency of the evidence claim (or claims) Appellant wished to raise on appeal; thus, the
*(Footnote Continued Next Page)*

> The Commonwealth's failure [to object to the defect in the Rule 1925(b) statement] and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. [***Commonwealth v. Castillo***, 888 A.2d 775 (Pa. 2005)], ***Commonwealth v. Butler***, 812 A.2d 631, 634 (Pa. 2002). Thus, we find 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion. ***Castillo***, 888 A.2d at 779, 780; ***Butler***, 812 A.2d at 634.

***Williams***, 959 A.2d at 1257.

Appellant's final claim on appeal is thus waived.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/12/2017


_(Footnote Continued)_ ───────

trial court considered Appellant's sufficiency of the evidence claim to be waived on appeal. ***See*** Trial Court Opinion, 5/27/16, at 7 ("[h]ere, the [c]ourt was given no clue as to what claims [Appellant] intends to raise on appeal regarding the sufficiency of the evidence to sustain any of the charges of which he was convicted. Accordingly, [Appellant's] sufficiency of the evidence claims are waived").